# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**BRIAN M. KUBICKI**
Jones Obenchain, LLP
South Bend, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**GARY R. ROM**
Deputy Attorney General
Indianapolis, Indiana



FILED
Dec 11 2012, 9:19 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

JAMES O. YOUNG,                                )
                                               )
    Appellant-Defendant,                      )
                                               )
        vs.                               )    No. 20A04-1112-CR-699
                                               )
STATE OF INDIANA,                              )
                                               )
    Appellee-Plaintiff.                       )

---

APPEAL FROM THE ELKHART SUPERIOR COURT
The Honorable Evan S. Roberts, Judge
Cause No. 20D01-1106-FD-88

---

**December 11, 2012**

**OPINION – FOR PUBLICATION**

**MATHIAS, Judge**

Following a jury trial in Elkhart Superior Court, James Young ("Young") was found guilty of Class D felony domestic battery in the presence of a child and Class D felony strangulation. Young appeals and argues that (1) the hearsay testimony of two firefighters regarding the victim's statements to them violated his rights under the Confrontation Clause of the Sixth Amendment of the Constitution of the United States; (2) the hearsay testimony of a police officer regarding the victim's later statements to her was inadmissible hearsay and violated his rights under the Confrontation Clause of the Sixth Amendment; and (3) there was insufficient evidence to support the convictions and to prove that Young committed the offenses in a child's physical presence so as to elevate the domestic battery offense from a Class A misdemeanor to a Class D felony.

We affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

**Facts and Procedural History**

On the morning of May 28, 2011, Dulce Gomez ("Gomez"), a friend, visited Young and Blanca Medrano ("Medrano"), at the apartment that they shared. Gomez observed the couple argue and saw Young leave with the couple's two-year-old child. She did not observe any physical contact between the couple while she was there. She left the apartment around 10:30 a.m.

Around noon, Medrano walked across the street from her apartment to Station 5 of the Elkhart Fire Department. She walked in front of the fire station's door several times while holding her infant child, and then she sat down on a bench outside and cried. Acting Lieutenant, Michael Hochstetler ("Hochstetler"), approached her to inquire about

2

what was wrong. At first, Medrano did not tell him and continued crying. Hochstetler observed "bruising on her arm and on her neck and an abrasion on her hand." Tr. p. 184. She then told Hochstetler that her husband had beaten her and left with their other child. Hochstetler asked firefighter, Gene Sanders ("Sanders"), to do a patient assessment and called dispatch for a police officer.

Medrano did not want to go to the hospital; therefore, Sanders checked her vitals and put a bandage on her hand. Sanders observed that Medrano was a petite woman and that she "had some bruising . . . a small cut on her right hand . . . a bruise on her – on her right side of her face near her chin . . . complained of back pain and she had bruising on her neck." Id. at 201. He also noticed she was distraught, crying, and "seemed to be a little afraid of something." Id.

For about forty-five minutes before the police arrived, Medrano spoke to Hochstetler and Sanders. Medrano spoke limited English and neither Hochstetler nor Sanders spoke Spanish. They had to repeat themselves often and had to ask her to repeat herself to ensure they understood her correctly. Id. at 196. According to Hochstetler, her bruises were from her husband beating her "at their apartment across the street" about "15 minutes ago." Id. at 185, 188-89, 191. Medrano did not tell Hochstetler where the children were during the incident, and he did not ask her. Id. at 196. She also told him she did not know where Young had gone but said her two-year-old daughter was with Young. Id. Sanders did not recall her "saying that she was upset about [Young] taking the child." Id. at 211. Hochstetler testified that after roughly forty minutes, Medrano

3

was "getting kind of antsy to leave" and when the police arrived, she "was no longer crying." Id. at 190.

Corporal Laurie Stuff ("Officer Stuff") of the Elkhart City Police Department arrived about forty-five minutes after Medrano came to the fire station. Id. at 192, 247. Officer Stuff noticed that Medrano had "redness to her neck," a bandage on her right hand, and some bruising. Id. at 234-35. Officer Stuff thought Medrano appeared "upset, she was crying, she seemed scared," and Medrano told Officer Stuff that "her husband had strangled her" until she could not breathe. Id. at 234, 241.

When Young, accompanied by his two-year-old daughter, pulled up to his and Medrano's apartment, which was within sight of the fire station, Officer Stuff left the fire station to speak with him. Young told Officer Stuff that he and his wife had gotten into a verbal argument, that she had taken $1000 from him, and that "she was trying to move and take the kids away from him." Id. at 243. Officer Stuff placed Young under arrest due to Medrano's "visible injuries" and Medrano's statements about being battered by Young. Id. at 244.

As a result of these events, the State charged Young with Class D felony strangulation[1] and Class D felony domestic battery.[2] The domestic battery charge was elevated from a Class A Misdemeanor to a Class D felony based on the State's allegation that Young had committed the offense in the "physical presence of a child less than sixteen (16) years of age, knowing that the child was present and might be able to see or hear the offense." Ind. Code § 35-42-1.3(b)(2).

_____

[1] Ind. Code § 35-42-2-9(b).
[2] Ind. Code § 35-42-2-1.3.

At trial, Medrano did not testify and could not be found. Therefore, over Young's objections, Hochstetler, Sanders, and Officer Stuff testified in regard to Medrano's prior statements. At the conclusion of trial, the jury found Young guilty of domestic battery in the presence of a child and guilty of strangulation, both Class D felonies. Young was sentenced to concurrent terms of three years for domestic battery and three years for strangulation. Young now appeals.[3]

## I. Admission of Firefighters' and Police Officer's Testimony

A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion. Lehman v. State, 926 N.E.2d 35, 37 (Ind. Ct. App. 2010), trans. denied (citing Iqbal v. State, 805 N.E.2d 401, 406 (Ind. Ct. App. 2004)). An abuse of discretion occurs if the trial court's decision is "clearly against the logic and effect of the facts and circumstances before the court, or if the court has misinterpreted the law." Boatner v. State, 934 N.E.2d 184, 186 (Ind. Ct. App. 2010).

### A. *Medrano's Statements to the Firefighters as Admissible Excited Utterance*

It is axiomatic that the firefighters' testimony concerning the statements Medrano made to them is hearsay. Hearsay is an out-of-court statement offered to prove the truth of the matter asserted and is inadmissible unless it falls under a hearsay exception. Ind. R. Evid. 801; see also Jenkins v. State, 725 N.E.2d 66, 68 (Ind. 2000) (citing Ind. R. Evid. 802). However, hearsay can be admissible under one of several exceptions, including excited utterance. Ind. R. Evid. 803. An excited utterance is "[a] statement

---

[3] We heard oral argument in this case on October 22, 2012, at the Allen County Courthouse in Fort Wayne, Indiana. We extend our thanks to court personnel and to the attending students and guests. We also commend counsel for the quality of their written and oral advocacy.

5

relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition" and is not excluded by the hearsay rule. Id. at 803(2). Although Young admits that Medrano's statements to the firefighters were excited utterances, he argues that, under the facts and circumstances of this case, admission of Medrano's statements to the firefighters nevertheless violates Young's constitutional rights under the Sixth Amendment to the U.S. Constitution. We therefore turn to his argument in this regard.

B. *The Firefighters' Testimony Considered under the Confrontation Clause*

Young argues that the trial court improperly admitted Medrano's statements to the firefighters because their primary purpose was to create an out-of-court substitute for trial testimony. The Confrontation Clause of the Sixth Amendment provides in relevant part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." See Crawford v. Washington, 541 U.S. 36, 42 ("We have held that this bedrock procedural guarantee applies to both federal and state prosecutions"); Lehman, 926 N.E.2d at 39. The Confrontation Clause applies to an out-of-court statement if it is testimonial, the declarant is unavailable, and the defendant had no prior opportunity to cross-examine the declarant. Crawford, 541 U.S. at 59. The essence of the Sixth Amendment "is to protect against abuses of government officials." Lehman, 926 N.E.2d at 39 (citing Pendergrass v. State, 913 N.E.2d 703, 706 (Ind. 2009)). Neither party contests whether Medrano was unavailable or whether Young had the prior opportunity to cross-examine Medrano.

To determine whether the statements are testimonial, we look at the primary purpose of the interrogation. Turner v. State, 953 N.E.2d 1039, 1055 (Ind. 2011) (citing

Michigan v. Bryant, 131 S.Ct. 1143, 1155 (2011)). If the circumstances objectively indicate that "the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency" then the statements are non-testimonial. Davis v. Washington, 547 U.S. 813, 822, 827 (2006) (holding that the victim's statements to a 911 operator, while the perpetrator was in the home, were non-testimonial because their primary purpose was to enable police assistance to meet an ongoing emergency). However, if "circumstances objectively indicate" the primary purpose is to "prove past events potentially relevant to later criminal prosecution" then statements are testimonial. Id. While neither Davis nor Bryant addressed to "what extent their holdings extended beyond the context of police interrogation," we have previously applied this primary purpose inquiry "outside the realm of explicit police questioning[.]" Perry v. State, 956 N.E.2d 41, 53 (Ind. Ct. App. 2011) (applying the primary purpose framework to statements made to medical personnel).

In our primary purpose inquiry, one of the most important factors is "the existence of an ongoing emergency[,]" because it "focuses the participants on something other than 'prov[ing] past events potentially relevant to later criminal prosecution.'" Bryant, 131 S. Ct. at 1157 (quoting Davis, 547 U.S. at 828-30). Determining whether an emergency exists and is ongoing is a "highly context-dependent inquiry." Id. at 1158. We consider whether the interrogation is targeted at responding to a call for help where a threat to people is ongoing as compared to an interrogation targeted at establishing past events. See Davis, 547 U.S. at 827.

7

An additional factor we consider is the formality and circumstances in which the questioning takes place. "Although formality is not the sole touchstone of our primary purpose inquiry, a statement's formality or informality can shed light on whether a particular statement has a primary purpose of use at trial." Turner, 953 N.E.2d at 1055 (citing Bullcoming v. New Mexico, 131 S.Ct. 2705, 2721 (2011) (Sotomayor, J., concurring)) (internal quotation marks omitted).

We also look at the "statements and actions of both the declarant and interrogators[,]" because they can provide "objective evidence of the primary purpose of the interrogation." Bryant, 131 S.Ct. at 1160. If questions are targeted at trying to resolve an ongoing emergency as opposed to gathering information about past events, then the responses are less likely to be considered testimonial. See State v. Martin, 885 N.E.2d 18, 21 (Ind. Ct. App. 2008) ("[T]he officers' questions to Brooks sought to resolve the ongoing emergency by establishing Martin's identity, the type of car he was driving, and his state of mind."); see also Davis, 547 U.S. at 827 (2006).

Young argues there was no ongoing emergency when Medrano was questioned by the firefighters, because the injuries were minor, and the questions were not targeted at providing her treatment. He asserts that the questions were targeted at getting information for a criminal prosecution.

In domestic dispute situations, responses to police officers' initial inquiries may often be, but are not always, non-testimonial, because the officers may need to investigate and identify the people involved in order to assess the situation, the threat to their safety, and the potential danger to the victim. Davis, 547 U.S. at 832 (2006) (citing Hiibel v.

8

Sixth Judicial Dist. Court of Nevada, Humboldt County, 542 U.S. 177, 186 (2004)). A victim's medical state can provide "context for first responders to judge the existence and magnitude of a continuing threat to the victim, themselves, and the public." Bryant, 131 S. Ct. at 1159. We also consider not only whether the threat "to the first victim has been neutralized" but also whether the emergency "threatens the police and public[.]" Id. at 1158. The Supreme Court in Bryant noted that "[d]omestic violence cases like Davis and Hammon often have a narrower zone of potential victims than cases involving threats to public safety." Id. However, even in domestic violence cases, the zone can extend beyond the victim. See Martin, 885 N.E.2d at 21 (holding that even though the declarant was not in danger, "she was experiencing an ongoing emergency because she did not know where her children were and she feared for their safety").

Here, Medrano arrived at the fire station crying, scared, bruised, with an abrasion on her hand, and holding an infant child. The reasons for Medrano's physical and emotional state were unknown. Medrano's responses to the firefighters' initial questions showed that Young's whereabouts were not then known, and that he had taken the couple's older child with him. Although Sanders testified that he did not recall Medrano being upset about Young taking their child, Medrano told firefighters that Young had beaten her and taken their child, which could reasonably concern the firefighters as to whether the older child was in danger. Thus, as to the issue of whether there was an ongoing emergency, we conclude that the firefighters' initial inquiries into the situation were proper to assess the situation, to determine the extent of harm Medrano had suffered, and to determine whether the child with Young was at risk. Such inquiries are

9

permissible under Crawford, and we hold that the inquiries at issue were permissible here.

Young next argues that the firefighters' questioning of Medrano was improper because it was formal in its nature: two firefighters asking Medrano questions at a fire station for forty-five minutes. To determine the level of formality, we look at how the questions were asked, and we look at where and when the "encounter occur[ed]—e.g., at or near the scene of the crime versus at a police station, during an ongoing emergency or afterwards." Bryant, 131 S.Ct. at 1156; Martin, 885 N.E.2d at 21 (concluding that there was little formality to the situation because the declarant was questioned while she was hysterical and sitting by the side of the road with "blood all over her face"); cf. Crawford, 541 U.S. at 66 (holding that when the victim calmly responded to questions at the police station with officers often asking leading questions, the statements were testimonial).

Here, the firefighters first encountered Medrano on a bench outside the fire station only fifteen minutes after the incident occurred, and the firefighters were largely focused on treating Medrano's injuries. Importantly, Medrano had come to the fire station of her own volition. Furthermore, when the firefighters started to ask her questions, Medrano was crying and had bruises on her face and neck. Under these facts and circumstances, we hold that to the extent that the questioning at issue was formal, i.e., on a bench outside a fire station, it was a level of formality commensurate with the nature of Medrano's visit, a visit she herself chose to make. We therefore hold that any formality in the firefighters' questioning of Medrano was of an extremely low level and was invited and created by Medrano herself.

For all of these reasons, we hold that the primary purpose of the firefighters' questioning of Medrano was to enable public, government assistance to Medrano in an ongoing emergency rather than to prove past events potentially relevant to future criminal prosecution. Therefore, the admission of Medrano's statements to the firefighters did not violate Young's confrontation rights under the Sixth Amendment of the U.S. Constitution. See Bryant, 131 S.Ct. at 1155-57; Davis, 547 U.S. at 828-30; Crawford, 541 U.S. at 59.

C. *Medrano's Statements to Officer Stuff as Excited Utterance*

Turning now to a consideration of Medrano's statements to Officer Stuff, once again the testimony at issue is hearsay under Indiana Evidence Rule 801. Hearsay is an out-of-court statement offered to prove the truth of the matter asserted, and it is inadmissible unless it falls under a hearsay exception. Ind. R. Evid. 801; see also Jenkins v. State, 725 N.E.2d 66, 68 (Ind. 2000) (citing Ind. R. Evid. 802).

The State argues that Medrano's statement was an excited utterance, which is an admissible exception to the hearsay rule. See Ind. R. Evid. 803. An excited utterance is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition" and is not excluded by the hearsay rule. Ind. R. Evid. 803(2).

To meet the excited utterance exception, three elements must be present: (1) a "startling event or condition" has occurred; (2) the declarant made a statement while "under the stress or excitement caused by the event or condition;" and (3) the statement was "related to the event or condition." Lawrence v. State, 959 N.E.2d 385, 389 (Ind. Ct.

11

App. 2012), trans. denied. This test is not "mechanical" and admissibility turns "on whether the statement was inherently reliable because the witness was under the stress of the event and unlikely to make deliberate falsifications." Sandefur v. State, 945 N.E.2d 785, 788 (Ind. Ct. App. 2011) (citing Boatner v. State, 934 N.E.2d 184, 185 (Ind. Ct. App. 2010) (citations omitted)). "The heart of the inquiry is whether the declarant was incapable of thoughtful reflection." Jones v. State, 800 N.E.2d 624, 627 (Ind. Ct. App. 2003).

In this case, neither party contests whether there was a startling event or whether the statement related to the event or condition. As Young argues, the main issue is whether Medrano's statements to Officer Stuff were "made while the declarant was under the stress or excitement caused by the event or condition[.]" Lawrence, 959 N.E.2d at 389 (Ind. Ct. App. 2012) (citing Impson, 721 N.E.2d at 1282).

While lapse of time is not dispositive, if a statement is made long after a startling event, it is usually "less likely to be an excited utterance[,]" Boatner, 934 N.E.2d at 186, because "[a] long period of time reduces the likelihood that a statement is made without deliberate thought and under the stress of excitement of an event." Jenkins, 725 N.E.2d at 68. We do not apply a "rigid test of elapsed time" but our supreme court has "found the exception available one half-hour after the 'startling event' only under extreme and continuing stress." Davenport v. State, 749 N.E.2d 1144, 1149 (Ind. 2001) (citing Yamobi v. State, 672 N.E.2d 1344, 1346-47 (Ind. 1996)).

Furthermore, an excited utterance can be made in response to a question so long as the statement is unrehearsed and is made under the stress of excitement from the event.

12

Yamobi, 672 N.E.2d at 1346 ("A declaration does not lack spontaneity simply because it was an answer to a question."); Williams v. State, 782 N.E.2d 1039, 1046 (Ind. Ct. App. 2003). In addition, we have considered if the declarant is crying, appears to be under stress, is injured, or is exhibiting other physical or psychological conditions that indicate stress. See e.g., Fowler v. State, 829 N.E.2d 459, 463-64 (Ind. 2005) (holding that statements made while the declarant was in pain, crying, bleeding, and having trouble breathing were properly admissible as excited utterances), cert. denied, abrogated on other grounds by Giles v. California, 554 U.S. 353 (2008).

These cases make it clear that, Medrano had to be under "extreme and continuing stress" for the trial court to find Medrano's statements to Officer Stuff admissible as an excited utterance. See Davenport, 749 N.E.2d at 1149. Officer Stuff did not speak with Medrano until about an hour after the incident, the firefighters had treated her injuries prior to Officer Stuff's arrival, and even before Officer Stuff arrived, Medrano had stopped crying and was "antsy to leave." Tr. p. 190. Even though Officer Stuff testified that Medrano was crying when she arrived, it appears, at least for some time prior to her arrival, Medrano had stopped crying. For all these reasons, we conclude that Medrano was not under the "extreme and continuing stress" of the battery at the time of Officer Stuff's arrival; therefore, her statements to Officer Stuff were not admissible as excited utterances.

D. *The State's Claim of Harmless Error*

The State then claims that, even if Medrano's statements to Officer Stuff were improperly admitted as excited utterances, the testimony was cumulative and the error was harmless. This argument fails in the first instance.

13

Officer Stuff's testimony at trial was not cumulative; rather, it was the only testimony that supported the State's strangulation charge against Young. See Turner, 953 N.E.2d at 1059 (holding that error is harmless if there is "substantial independent evidence of guilt satisfying the reviewing court there is no substantial likelihood the challenged evidence contributed to the conviction"). It is axiomatic that improper admission of the only proffered evidence that supports a charge cannot be harmless error.[4] We must therefore reverse Young's conviction for strangulation, subject, however, to possible retrial. See Stahl v. State, 686 N.E.2d 89 (1997) ("[I]f all the evidence, even that erroneously admitted, is sufficient to support the jury verdict, double jeopardy does not bar a retrial on the same charge.").

## II. Sufficiency of the Evidence as to Young's Domestic Battery Conviction as a Class D Felony

In reviewing a challenge to sufficiency of the evidence, we do not "reweigh the evidence or judge the credibility of the witnesses" rather we respect "'the jury's exclusive province to weigh conflicting evidence.'" McHenry v. State, 820 N.E.2d 124, 126 (Ind. 2005) (quoting Alkhalidi v. State, 753 N.E.2d 625, 627 (Ind. 2001)). We "consider only the probative evidence and reasonable inferences supporting the verdict" and "affirm 'if the probative evidence and reasonable inferences drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt.'" Id. (quoting Tobar v. State, 740 N.E.2d 109, 111-12 (Ind. 2000)).

---

[4] Young also argues that Officer Stuff's testimony was a violation of the Confrontation Clause of the Sixth Amendment. However, we refrain from addressing a consititutional issue, if we are able to resolve a case on nonconstitutional grounds. See State v. Moore, 909 N.E.2d 1053, 1058 (Ind. Ct. App. 2009) ("It is long established that a constitutional question unnecessary to a determination of the merits should not be decided." (quoting State v. Brown, 840 N.E.2d 411, 414 (Ind. Ct. App. 2006))).

14

We concluded above that the firefighters' testimony was properly admitted, and from their testimony, which included Medrano's statements that she had been beaten by Young and their descriptions of the injuries, a reasonable trier of fact could have found Young guilty of Class A misdemeanor domestic battery beyond a reasonable doubt.

However, Young argues that even if the testimony regarding Medrano's out-of-court statements was properly admitted, it was insufficient evidence to prove that the domestic battery occurred in the presence of a child less than sixteen years of age, thus elevating the crime to a Class D felony. Under Indiana Code section 35-42-2-1.3(b)(2), Young had to commit domestic battery "knowing that the child was present and might be able to see or hear the offense." This does not require the jury to conclude that the child saw the battery, only that the child might be able to see or hear the offense. True v. State, 954 N.E.2d 1105, 1110-11 (Ind. Ct. App. 2011) ("'Presence' is defined as knowingly being within either the possible sight or hearing of a child.").

Gomez testified that the children were in the apartment the morning of the incident, but Gomez left, at the very least, a full hour before the incident occurred. Approximately fifteen minutes after the incident, Medrano arrived at the fire station in tears, with her infant child in her arms, claiming that Young had beaten her and taken their other child with him after doing so. However, Hochstetler testified that Medrano did not tell him where the children were when the incident happened and he did not ask her. Tr. p. 196. Thus, while we know the incident occurred "*at* their apartment," there was insufficient evidence in the record as to precisely where the incident took place and where the children were during the incident. Id. at 188 (emphasis added). The only evidence as to

15

the location of the incident and of the children during the incident is the vague preposition, "at." Id. We hold that this evidence is insufficient for the jury to conclude beyond a reasonable doubt that Young committed domestic battery "knowing that the child was present and might be able to see or hear the offense." Ind. Code § 35-42-2-1.3(b)(2). However, this evidence is sufficient to support the lesser-included offense of Class A misdemeanor domestic battery as a matter of law.

**Conclusion**

The trial court did not abuse its discretion when it admitted the firefighters' hearsay testimony of Medrano's version of the incident. However, admission of Officer Stuff's hearsay testimony was error and could not be harmless error. We therefore reverse Young's conviction for Class D felony strangulation, subject however to possible retrial. Further, the evidence was insufficient to support Young's conviction for domestic battery as a Class D felony but sufficient to support the lesser-included charge of Class A misdemeanor domestic battery; therefore, we remand with instructions that judgment of conviction for domestic battery as a Class A misdemeanor be entered against Young and that he be resentenced accordingly.

Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.

VAIDIK, J., and BARNES, J., concur.