**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED
Jun 13 2013, 6:18 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JANE H. CONLEY**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RYAN D. JOHANNINGSMEIER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| BRANDAN BELLAMY, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No.  49A02-1210-CR-866 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Robert R. Altice, Judge
Amy J. Barbar, Magistrate
Cause No. 49G02-1207-FC-51526

June 13, 2013

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

In this case, the victim of a domestic violence incident failed to appear at trial and testify against her assailant, the appellant-defendant, Brandan Bellamy, who was charged with Battery,[1] a class C felony. The trial court admitted a statement into evidence from the victim to a police officer that Bellamy had hit her as an excited utterance.

Under these circumstances, we conclude that the statement did not qualify as an excited utterance under the exception to the hearsay rule. Therefore, the trial court erred in admitting the statement. However, there was substantial independent evidence of Bellamy's guilt through an eyewitness's testimony. Therefore, the trial court's erroneous admission of the statement into evidence was harmless error, and we decline to set aside Bellamy's conviction.

<u>FACTS</u>

Sometime during the evening of July 27, 2012, Janet Miller arrived at a parking lot near the Masterpiece Club in Indianapolis. As Miller was exiting her vehicle, she heard "a lot of noise like somebody arguing." Tr. p. 17. Miller could tell that the argument was "very heated" and a man and a woman were cursing at each other. <u>Id.</u> When Miller initially encountered the argument, the man, who was subsequently identified as Bellamy, had not touched the woman. However, Miller eventually saw Bellamy punch the woman, who was later identified as Princess Hamler, and he "just knocked her out." <u>Id.</u> at 18-19.

The woman fell to the ground, and Miller approached Hamler. Miller noticed that Hamler was "out cold" and not "moving at all." <u>Id.</u> at 20, 22. Bellamy told Miller that

---

[1] Ind. Code § 35-42-2-1(a)(3).

2

"it's . . . none of [her] business and [told her] to get away." Id. at 19, 24.  Miller was fearful that Bellamy might attack her, but a third man approached and Bellamy started to walk away.  Miller noticed that Hamler "was [still] not responsive, . . . and blood was gushing all out of her nose." Id. at 25.  Miller's cousin, who was at the scene, called the police and Hamler was eventually able to stand.  When the police arrived, Miller walked into the club.

Indianapolis Metropolitan Police Department (IMPD) Officer Karen Pennington arrived within ten minutes in response to the dispatch.  Officer Pennington saw two males and a female walking away from her.  Officer Pennington heard Bellamy, the taller male, yelling, as Officer Michael Harmon arrived from the other direction.  As a result, the two males and the female stopped before the shorter male continued to walk away.

Officer Pennington noticed that Hamler's nose was bleeding and that blood was covering her shirt.  Hamler's eyes were also bloodshot.  When Hamler identified herself to Officer Pennington, she was wiping her face with her hands.  Hamler appeared to be disoriented and confused.

After standing with the police officers for about twenty minutes, Hamler turned to Bellamy and said three times to Bellamy, "you hit me." Id. at 66.  Hamler made those statements without any questioning from the police officers, had not provided any statements to them, and seemed lucid.  Hamler also indicated that she did not want to talk to the police.

3

Bellamy had blood on his pants and hands and the police officers noticed a "strong odor of alcoholic beverage on his breath and person. Bellamy also had blood-shot watery eyes [and] his speech was slurred." Id. at 49. Bellamy refused to cooperate with the police and was being "very loud." Id. As a result, Bellamy was arrested for disorderly conduct after he continued to yell at Hamler and after the police told him to be quiet on several occasions. Id. at 63-64. The police officers then called for paramedics to examine Bellamy and Hamler, but neither requested treatment.

Bellamy was charged with battery, a class C felony, and waived his right to a jury trial. A bench trial commenced on September 7, 2012, but Hamler did not appear. During trial, the following colloquy occurred between the deputy prosecutor and Officer Harmon on direct examination:

> Q. Uhm, did you hear Ms. Hamler make any comments directed towards Mr. Bellamy?
>
> A. Yes, towards the end of the—
>
> MS. BAUDER: I'm going to object at this point as to hearsay. Again, it's hearsay and it would be a violation of his right to confront this witness as she won't be here under the Sixth Amendment, under the United States Constitutions, Article I, Section 13, under the Indiana Constitution.
>
> THE COURT: Response.
>
> MS. WILSON: Yes, Judge. In regard to hearsay exception, I believe it falls under 803.2, as an excited utterance. . . .
>
> THE COURT: Would you like to say anything in that—to their argument.

MS. BAUDER: My only other argument is even if it is and does not meet uhm, the requirements under the hearsay exception, I'll never be able to confront her about that and he would lose all of his constitutional rights as I've stated twice now. Uhm because I will never be able to confront her.

THE COURT: Well, the Supreme [C]ourt's addressed that matter. And excited utterances are still permitted under the exception to the hearsay rule, so the Court will overrule the objection.

Q. Officer Harmon, what did you hear Ms. Hamler say towards the defendant?

A. She stated three times, "You hit me."

Q. When she was indicating that, was it in a conversation tone like we're speaking?

A. No, it was, uhm, an angry tone.

Q. Okay. Louder or softer?

A. Louder.

Tr. p. 65-66.

Bellamy was found guilty as charged and was subsequently sentenced to four years of incarceration for class C felony battery.[2] Bellamy now appeals.

### DISCUSSION AND DECISION

Bellamy contends that his conviction must be reversed because the trial court improperly admitted hearsay evidence and therefore violated his right to confront and cross-examine Hamler. More particularly, Bellamy argues that the trial court's admission

---

[2] Bellamy also pleaded guilty to a habitual offender charge. The trial court enhanced the four-year-sentence on the battery count by four years, for an aggregate term of eight years. Tr. p. 109.

5

of Hamler's statement, "you hit me," to Officer Harmon, did not qualify as an excited utterance exception to the hearsay rule. Appellant's Br. p. 6.

In resolving this issue, we initially observe that the decision to admit or exclude evidence is within the trial court's sound discretion. Johnson v. State, 831 N.E.2d 163, 168-69 (Ind. Ct. App. 2005). We will reverse only upon a showing of an abuse of discretion. Southern v. State, 878 N.E.2d 315, 321 (Ind. Ct. App. 2007). An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court. Id. We will reverse only when a manifest abuse of discretion denies the defendant a fair trial. Norton v. State, 785 N.E.2d 625, 629 Ind. We do not reweigh the evidence and will consider conflicting evidence in a light most favorable to the trial court's ruling. Cole v. State, 878 N.E.2d 882, 885 (Ind. Ct. App. 2007).

Hearsay is an out-of-court statement that is offered to prove the truth of the matter asserted and is inadmissible unless it falls under a particular exception. Ind. Evid. Rule 801; Jenkins v. State, 725 N.E.2d 66, 68 (Ind. 2000). One such exception is an "excited utterance," which is defined under Indiana Evidence Rule 803(2) as "a statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." To qualify as an excited utterance, three elements must exist: 1) a startling event or condition has occurred; 2) the declarant made a statement while under the stress or excitement caused by the event or condition; and 3) the statement was related to the event or condition. Young v. State, 980 N.E.2d 412, 421

(Ind. Ct. App. 2012), <u>trans. denied.</u> The heart of the inquiry is whether the declarant was incapable of thoughtful reflection. <u>Id.</u>

In this case, Bellamy's sole challenge is whether Hamler's statement qualified as an excited utterance. In support of the contention that Hamler's comments should not have been admitted as an excited utterance, Bellamy directs us to our Supreme Court's opinion in <u>Hammon v. State</u>, 829 N.E.2d 444 (Ind. 2005), which was analyzed as a companion case and actually reversed in <u>Davis v. Washington</u>, 547 U.S. 814 (2006).

In <u>Hammon</u>, the evidence demonstrated that police officers responded to a report that involved a domestic disturbance at the Hammons's residence. A police officer interviewed the wife and obligated her to swear to a statement accusing her husband of domestic violence. Hammon's wife did not appear at his bench trial, but her affidavit and testimony from the police officer who questioned her were admitted over the defendant's objection.

The State claimed that Wife's statement fell under the excited utterance exception to the hearsay rule. Our Supreme Court agreed, and concluded that while the affidavit was testimonial and, therefore, wrongly admitted, it was harmless beyond a reasonable doubt, primarily because the trial was to the bench.

The United States Supreme Court went on to reverse Hammon's conviction pursuant to his Sixth Amendment rights. In so doing, the Supreme Court determined that the admission of Hammon's wife's statement was not harmless because defendant's conviction was reversed, and it was observed that "in cases like this one, where wife's

7

statements were neither a cry for help nor the provision of information enabling officers immediately to end a threatening situation, the fact that they were given at an alleged crime scene . . . is immaterial." Davis, 547 U.S. at 832.

Notwithstanding the above rationale, the State maintains that Hamler's statement qualified as an excited utterance and did not violate Bellamy's right to confront and cross-examine Hamler because she appeared disoriented and confused and did not become lucid until the investigation was nearly over. The State notes that Hamler's statements were not responsive to any police questioning, and she was not cooperative with the police officers. Therefore, the State argues that Hamler's statements were properly admitted as an excited utterance.

The evidence in this case demonstrated that more than thirty minutes had elapsed since the incident had occurred. Officer Pennington arrived at the scene shortly after it occurred and she had to be directed to the area where the argument ensued. Officer Pennington first noticed Hamler and Bellamy as they were walking away from the area. Both Bellamy and Hamler told Officer Pennington that they did not need any assistance.

Although Hamler spoke with the police officers, she did so only when one of them approached her. The paramedics were dispatched to the scene and did not arrive for nearly thirty minutes. They were not asked to treat either Hamler or Belamy, and it was during this time that Hamler made the statement to Officer Harmon that Bellamy had hit her. Bellamy was already in handcuffs, and Officer Harmon described Hamler as "lucid." Tr. p. 64-65.

In our view, the evidence fails to demonstrate that Hamler was "incapable of thoughtful reflection" as the excited utterance exception requires. Young v. State, 980 N.E.2d 412, 420 (Ind. Ct. App. 2012). Indeed, after the incident, Hamler got up, walked away, and refused to speak with the police officers. Hamler was in no danger from Bellamy and the officers observed her walking away from the scene with him. That said, we conclude that the trial court erred in allowing Hamler's statement into evidence and accepting her statements as an excited utterance because it was made more than one-half hour after the event and Hamler had been described as lucid.

However, our inquiry does not stop here. Bellamy is not entitled to a reversal of his conviction because the trial court's admission of Hamler's statements into evidence was harmless error. An error is harmless if there is substantial independent evidence of guilt satisfying the reviewing court that there is no substantial likelihood that the challenged evidence contributed to the conviction." Turner v. State, 953 N.E.2d 1039, 1059 (Ind. 2011).

Here, Hamler's statements were only cumulative of Miller's testimony. As discussed above, Miller testified that she saw a man whom she later identified as Bellamy, punch Hamler. Tr. p. 19-20, 22. The punch left Hamler unconscious on the ground for nearly ten minutes. Id. at 20. The punch caused blood to "gush[]" from her nose. Id.

In our view, the State presented independent sufficient evidence to establish that Bellamy had struck Hamler. Indeed, Bellamy did not deny hitting Hamler. Id. at 76-77.

9

For these reasons, we conclude that any error in admitting Hamler's statements into evidence was harmless.  Thus, we decline to set aside Bellamy's conviction.

The judgment of the trial court is affirmed.

MAY, J., and MATHIAS, J., concur.