## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jul 20 2015, 8:58 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Jared Michel Thomas
Evansville, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Eric P. Babbs
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

William Eugene Slaton,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff,*

July 20, 2015

Court of Appeals Cause No.
82A05-1412-CR-589

Appeal from the Vanderburgh
Superior Court
The Honorable Robert J. Pigman,
Judge
Case No. 82D02-1307-FB-879

**Robb, Judge.**

# Case Summary and Issues

[1] Following a jury trial, William Slaton was convicted of attempted dealing in methamphetamine, a Class B felony, and possession of methamphetamine, a

Class D felony, and he was found to be an habitual substance offender. He received an aggregate sentence of eighteen years imprisonment. Slaton appeals his convictions and sentence, raising two issues for our review: (1) whether evidence admitted at trial was obtained as a result of an illegal search of Slaton's curtilage and residence, and (2) whether his sentence is inappropriate in light of the nature of his offenses and his character. Concluding Slaton's Fourth Amendment rights were not violated and that his sentence is not inappropriate, we affirm.

## Facts and Procedural History

On June 27, 2013, the Evansville Police Department received a report of suspected methamphetamine manufacturing at Slaton's address. Four officers arrived at the address and smelled a chemical odor, which they associated with the manufacture of methamphetamine, coming from the house. Officers Robert Hahn and Nick Henderson approached the house, which was divided into two apartments. The officers walked up onto the porch, which allowed access to doors belonging to each apartment.

The officers first knocked on the door to the rear apartment, and a woman answered. The officers explained why they were at the house. The woman informed them that the odor was coming from next door and pointed them to the other apartment. The officers walked across the porch to the front apartment. The door to that apartment was boarded up, but next to the door was an open window. Officer Hahn looked through the window and into the

apartment that belonged to Slaton. He saw Slaton inside, carrying a glass jar toward the kitchen sink. Officer Hahn asked Slaton to stop. Slaton made eye contact with Officer Hahn, but Slaton, still holding the jar, continued more quickly toward the sink despite the officer's repeated requests to stop. At that point, Officer Henderson dove through the open window and grabbed Slaton.

[4] The police detained Slaton and two other individuals located in the house. Once outside, Slaton consented to a search of the apartment. The search produced a number of items associated with the manufacture of methamphetamine, including: pseudoephedrine blister packs; lithium batteries; ammonium nitrate cold packs; aluminum foil; lye; acid-based drain cleaner; a glass jar with tubing attached to it; and several empty two-liter bottles. Additionally, 0.69 grams of methamphetamine was found in Slaton's bedroom.

[5] The State charged Slaton as follows: Count 1, dealing in methamphetamine, a Class B felony; Count 2, maintaining a common nuisance, a Class D felony; and Count 3, dealing in methamphetamine, a Class B felony. The State also alleged that Slaton was an habitual substance offender. Slaton filed a pre-trial motion to suppress, which the trial court denied. A jury trial was held in September 2014, and the jury found Slaton guilty of attempted dealing in methamphetamine, a lesser included offense of Count 1, and guilty of possession of methamphetamine, a lesser included offense of Count 3.[1] Slaton

[1] Count 2 was dismissed pursuant to the State's motion.

admitted to being an habitual substance offender. The trial court sentenced Slaton to fifteen years on Count 1, enhanced by three years due to his habitual substance offender status, and one and one-half years on Count 3, to be served concurrently with Count 1. This appeal followed.

# Discussion and Decision

## I. Fourth Amendment

[6] Slaton argues that the trial court improperly admitted evidence at trial that was obtained by an illegal search of his curtilage and residence in violation of the Fourth Amendment to the United States Constitution.[2] The trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion. *Young v. State*, 980 N.E.2d 412, 417 (Ind. Ct. App. 2012). An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances or if the court has misinterpreted the law. *Id.* The constitutionality of a search is a question of law to be reviewed de novo. *Kelly v. State*, 997 N.E.2d 1045, 1050 (Ind. 2013).

[7] The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." A warrantless search of a person's home or curtilage is presumptively unreasonable. *See J.K. v. State*, 8 N.E.3d 222, 229 (Ind. Ct. App. 2014). But

---

[2] Slaton does not raise a separate claim under the Indiana Constitution.

because the "ultimate touchstone of the Fourth Amendment is reasonableness," the warrant requirement is subject to certain exceptions. *Kentucky v. King*, 131 S.Ct. 1849, 1856 (2011) (quotation marks omitted).

[8] Slaton first argues that the officers' presence on his porch and act of looking through his window was an impermissible search of his curtilage. There is no question that Slaton's porch is curtilage protected by the Fourth Amendment. *See Florida v. Jardines*, 133 S.Ct. 1409, 1415 (2013) ("The front porch is the classic exemplar of an area adjacent to the home and to which the activity of home life extends.") (citation and quotation marks omitted). However, "law enforcement officers are not strictly prohibited from entering a person's curtilage" without a warrant. *J.K.*, 8 N.E.3d at 229. "[L]aw enforcement officers enjoy a limited invitation to approach a home through ordinary routes of ingress and egress open to visitors." *Id.* An officer is permitted to "approach the home by the front path, knock promptly, wait briefly to be received, and then (absent invitation to linger longer) leave." *Id.* at 232 (quoting *Jardines*, 133 S.Ct. at 1415). A traditional "knock and talk" conducted within the parameters described above does not violate the Fourth Amendment. *See id.* at 229.

[9] The officers' actions in this case were within the limitations of a permissible knock and talk. The officers approached the house using a walkway connected to the street, and the porch provided access to a door belonging to each of the two apartments located inside the house. It seems that the officers' path was through ordinary routes of ingress and egress, and that the porch is a place where a visitor of Slaton's apartment could be expected to go. The officers'

entry onto Slaton's porch and approach of his door and window did not violate the Fourth Amendment.

[10] Slaton also claims that Officer Hahn's act of looking through his open window and into the apartment was an unconstitutional search. Slaton is mistaken. Officer Hahn was conducting a valid knock and talk and was able to see through the open window while standing on Slaton's porch. Officer Hahn made his observations from a place where he was lawfully entitled to be, and what he observed was in "open view" from his vantage point. *See Justice v. State*, 765 N.E.2d 161, 164-65 (Ind. Ct. App. 2002) (discussing the open view doctrine). Therefore, an illegal search did not occur when Officer Hahn looked through Slaton's window. *Id.*

[11] Finally, Slaton contests the officers' warrantless entry into his residence. The State asserts that the entry was justified by Officer Henderson's belief that immediate entry was necessary to prevent the destruction of evidence. Indeed, warrantless entry into a residence is permissible when it is necessary to "prevent the imminent destruction of evidence." *King*, 131 S.Ct. at 1856 (citation omitted). In this case, the officers visited Slaton's residence due to a report of possible methamphetamine manufacturing. Their suspicion was corroborated by a chemical odor emanating from Slaton's apartment. Officer Hahn and Officer Henderson looked inside and saw Slaton carrying a glass jar. When asked to stop, Slaton made eye contact with the officer, then moved more quickly toward the kitchen sink. At that point, the officers had probable cause to believe that Slaton was manufacturing methamphetamine and that

destruction of evidence was imminent.[3] Therefore, under the circumstances, the officers' warrantless entry was not an unreasonable search under the Fourth Amendment.

# II. Slaton's Sentence

[12] Slaton requests that we reduce his eighteen year sentence. Indiana Appellate Rule 7(B) provides appellate courts with the authority to revise a defendant's sentence if, "after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Generally, we defer to the trial court's sentencing discretion "unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015). It is the defendant's burden to persuade the reviewing court that the sentence is inappropriate. *Conley v. State*, 972 N.E.2d 864, 876 (Ind. 2012).

[13] "When considering the nature of the offense, the advisory sentence is the starting point to determine the appropriateness of a sentence." *Holloway v. State*, 950 N.E.2d 803, 806 (Ind. Ct. App. 2011). At the time of Slaton's offenses, a

---

[3] Officer Hahn testified that liquid precursors used in the manufacture of methamphetamine could be easily disposed of by dumping them down the drain of a kitchen sink.

Class B felony carried an advisory sentence of ten years, with a range of six to twenty years. Ind. Code § 35-50-2-5(a). In addition, the habitual substance offender statute provided that "[t]he court shall sentence a person found to be a habitual substance offender to an additional fixed term of at least three (3) years but not more than eight (8) years imprisonment." Ind. Code § 35-50-2-10(f) (2013). Thus, Slaton's habitual substance offender enhancement required him to receive an additional term of at least three and as many as eight years. He received fifteen years for his Class B felony and an additional three years for his habitual offender enhancement.

[14] Admittedly, the nature of Slaton's offenses seem, if anything, less egregious than the typical case involving manufacturing or dealing in methamphetamine. Slaton did not have an active methamphetamine lab, and less than one gram of methamphetamine was found inside his apartment. That said, Slaton's criminal history belies any claim that he is deserving of a reduced sentence. At forty-six years of age, Slaton has amassed ten prior felony convictions and seventeen prior misdemeanor convictions. Moreover, lesser punishments doled out in the past have apparently failed to deter Slaton from further criminal behavior, as he admitted to manufacturing methamphetamine on other occasions and to abusing methamphetamine on a daily basis.

[15] Slaton asks us to consider an alleged hardship that would befall his father if he goes to prison, and that his crimes did not result in damage to another person or property. However, we are not persuaded that either circumstance, even if true, outweighs Slaton's criminal history and renders his sentence inappropriate.

# Conclusion

We conclude that the officers' warrantless entry of Slaton's curtilage and residence did not violate the Fourth Amendment. We further conclude that Slaton's eighteen year sentence is not inappropriate in light of the nature of his offenses and his character. Accordingly, we affirm.

Affirmed.

May, J., and Mathias, J., concur.