## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**ATTORNEY FOR APPELLANT**

Timothy J. Burns
Indianapolis, Indiana

**ATTORNEYS FOR APPELLEE**

Gregory F. Zoeller
Attorney General of Indiana

Christina D. Pace
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jemel Young,<br>*Appellant-Defendant*,<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff*. | February 15, 2016<br><br>Court of Appeals Case No.<br>49A05-1505-CR-316<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Angela D. Davis, Judge<br><br>The Honorable Allan Reid, Commissioner<br><br>Trial Court Cause No.<br>49G16-1411-CM-52686 |

**Brown, Judge.**

[1] Jemel Young appeals his conviction for battery as a class B misdemeanor. Young raises two issues, one of which we find dispositive and which we revise and restate as whether the court abused its discretion in admitting certain testimony. We reverse.

*Facts and Procedural History*

[2] On November 18, 2014, Indiana State Trooper Corey Berfield was patrolling southbound on Interstate 465 when he received a dispatch regarding an occurrence on the interstate. He turned around and proceeded northbound, and at some point he came upon the vehicle in question and observed a male and female inside. He learned that the male driver was a Good Samaritan, who had observed the female, later identified as Amber Rogers, walking along the interstate and let her sit in his car until police arrived. Trooper Berfield observed that Rogers was very upset, was "crying," and was "just kind of frantic about the situation and what had occurred." Transcript at 8. Trooper Berfield observed redness and swelling on the left side of Rogers's jaw, and although she complained of tenderness in that area she declined medical attention both at the scene and later at the State Police Post. Based on his conversation with Rogers, Trooper Berfield made a report to the Noblesville Police Department to "keep an eye out for a certain vehicle, individual at a certain location," that being Young. *Id.* at 23. The entire time Trooper Berfield spoke with Rogers, she was upset and crying.

[3] Young was located in downtown Noblesville by Noblesville Police Officer Jason McDermott, who confirmed that he was following Young, activated his

lights and sirens, pulled Young over, and detained him. Officer McDermott informed Young of his Miranda rights, and Young voluntarily began speaking with him. He admitted to the officer that he was driving with Rogers on the highway, that they were arguing in the car, that he told Rogers to "get the f--- out the car," Exhibit 6 at Officer McDermott Camera 1, 11:25:58- 11:26:02, and that when she refused he "nudged her" out of the vehicle. Transcript at 42. Young also acknowledged that Rogers was stuck on the interstate after she had been nudged from the vehicle.

[4]     On November 24, 2014, the State charged Young with battery resulting in bodily injury as a class A misdemeanor. On April 17, 2015, the court held a bench trial. Rogers did not appear as a witness. Over Young's objection, the court admitted the testimony of Trooper Berfield pursuant to Ind. Evidence Rule 803(2) that Rogers had told him that there had been an incident in a vehicle with Young, that Young drove a white Chevrolet Impala, and that Young was on his way to work at a golf course located in Hamilton County. In admitting the statements, the court stated: "We have not established how much time elapsed during this time frame. I think that [the State] is correct there is no limitation on the excited utterance. If the Officer testifies that she was still very excited, I think you accept the scope wise." *Id.* at 17.

[5]     At the conclusion of the State's case-in-chief, Young moved for involuntary dismissal under Ind. Trial Rule 41(B), and the court ruled that, although the State did not prove that Young was guilty of battery resulting in bodily injury as a class A misdemeanor, it could proceed under the lesser included offense of

battery as a class B misdemeanor. Young testified as to his version of the events leading to Rogers exiting the vehicle on the date in question. At the conclusion of trial, the court found Young guilty of battery as a class B misdemeanor and sentenced him to 180 days with 152 days suspended to probation and the balance credited for time served.

## *Discussion*

[6] The dispositive issue is whether the court abused its discretion in admitting evidence of Rogers's statements to Trooper Berfield under the excited utterance exception to the hearsay rule. Generally, we review the trial court's ruling on the admission or exclusion of evidence for an abuse of discretion. *Noojin v. State*, 730 N.E.2d 672, 676 (Ind. 2000). We reverse only where the decision is clearly against the logic and effect of the facts and circumstances. *Joyner v. State*, 678 N.E.2d 386, 390 (Ind. 1997), *reh'g denied*. We will not reverse an error in the admission of evidence if the error was harmless. *Turner v. State*, 953 N.E.2d 1039, 1058 (Ind. 2011). Errors in the admission of evidence are to be disregarded unless they affect the defendant's substantial rights. *Id.* at 1059. In determining the effect of the evidentiary ruling on a defendant's substantial rights, we look to the probable effect on the fact-finder. *Id.* The improper admission is harmless error if the conviction is supported by substantial independent evidence of guilt satisfying the reviewing court that there is no substantial likelihood the challenged evidence contributed to the conviction. *Id.*

[7] Young challenges the court's decision to admit statements Rogers made to Trooper Berfield that an incident occurred, the identification of Young, and

how to locate Young, arguing that such statements were inadmissible hearsay because they do not conform to the excited utterance exception. Hearsay is a statement, other than one made by the declarant while testifying at trial, offered in evidence to prove the truth of the matter asserted. Ind. Evidence Rule 801(c). Hearsay is inadmissible unless admitted pursuant to a recognized exception. Ind. Evidence Rule 802. An excited utterance is such an exception and is defined as "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Ind. Evidence Rule 803(2). Application of this rule is not mechanical and admissibility should generally be determined on a case-by-case basis. *Palacios v. State*, 926 N.E.2d 1026, 1031 (Ind. Ct. App. 2010) (citing *Love v. State*, 714 N.E.2d 698, 701 (Ind. Ct. App. 1999), *reh'g denied*). Thus, the heart of the inquiry is whether the statement is inherently reliable because the declarant was incapable of thoughtful reflection. *Id.* (citing *Yamobi v. State*, 672 N.E.2d 1344, 1346 (Ind. 1996)). The statement must be trustworthy under the specific facts of the case at hand. *Id.* The focus is on whether the statement was made while the declarant was under the influence of the excitement engendered by the startling event. *Id.* The amount of time that has passed between the event and the statement is not dispositive; rather, the issue is whether the declarant was still under the stress of excitement caused by the startling event when the statement was made. *Mathis v. State*, 859 N.E.2d 1275, 1279 (Ind. Ct. App. 2007).

[8] Young specifically argues that time had elapsed between the time Rogers entered the car of the Good Samaritan and spoke with him and the time that Trooper Berfield came upon the car, that the State did not present evidence regarding the length of time that had elapsed, and that accordingly the State did not lay an adequate foundation to show that Rogers's statements were made under extreme and continuing stress of the startling event. The State argues that the amount of time that passed between the startling event and the statement is not dispositive and that the evidence demonstrated that Rogers was crying and upset when she spoke with Trooper Berfield. The State also argues that any error in the admission of the testimony was at most harmless in nature.

[9] The parties discuss the case of *Young v. State*, 980 N.E.2d 412 (Ind. Ct. App. 2012). In *Young*, on the morning of May 28, 2011, Dulce Gomez visited defendant James Young and Blanca Medrano at their apartment and observed them argue and saw James leave with the couple's two-year-old child. 980 N.E.2d at 416. She did not observe any physical contact between the couple while she was there and until she left at around 10:30 a.m. *Id.* Around noon, Medrano walked across the street to the fire department and eventually sat down on a bench outside and cried. *Id.* Acting Lieutenant Michael Hochstetler approached her and asked what was wrong. *Id.* At first Medrano did not tell him and continued crying, Hochstetler observed "bruising on her arm and on her neck and an abrasion on her hand," and Medrano then told him that her husband had beaten her and left with their other child. *Id.* Hochstetler asked another firefighter, Gene Sanders, to do a patient assessment, and he called

dispatch for a police officer. *Id.* Medrano spoke to Hochstetler and Sanders for about forty-five minutes before the police arrived, but they had trouble communicating due to a language barrier. *Id.* By the time the police arrived, Hochstetler believed that Medrano "was 'getting kind of antsy to leave' and when the police arrived, she 'was no longer crying.'" *Id.* at 417. When Corporal Laurie Stuff of the Elkhart City Police Department arrived, she "noticed that Medrano had 'redness to her neck,' a bandage on her right hand, and some bruising," she "thought Medrano appeared 'upset, she was crying, she seemed scared,' and Medrano told Officer Stuff that 'her husband had strangled her' until she could not breathe." *Id.* James was charged with strangulation as a class D felony and domestic battery as a class D felony. *Id.* At trial, Medrano failed to appear and the firefighters and Officer Stuff testified regarding the statements Medrano made to them, which were admitted as excited utterances. *Id.* James was found guilty as charged. *Id.*

[10]  On appeal, James admitted that the statements of the firefighters were admissible as excited utterances, but he challenged Officer Stuff's testimony in that regard.[1] *Id.* at 418, 420. We noted that "[w]hile lapse of time is not dispositive, if a statement is made long after a startling event, it is usually less likely to be an excited utterance" because "[a] long period of time reduces the likelihood that a statement is made without deliberate thought and under the

---

[1] James challenged the admissibility of the firefighters' testimony under the Sixth Amendment's Confrontation Clause. 980 N.E.2d at 418-420.

stress of excitement of an event." *Id.* at 421 (internal quotations and citations omitted). We held that Medrano's statements were not admissible as excited utterances because Officer Stuff did not speak with her until about an hour after the incident, and the firefighters had treated her injuries prior to Officer Stuff's arrival. *Id.* at 421-422. We further noted that although Officer Stuff testified that Medrano was crying when she arrived, the evidence revealed that at some time prior to her arrival Medrano had stopped crying and "was 'antsy to leave.'" *Id.* at 422. We also concluded that the admission of Officer Stuff's testimony was not harmless because it "was not cumulative; rather, it was the only testimony that supported the State's strangulation charge against [James]." *Id.* We ruled that "[i]t is axiomatic that improper admission of the only proffered evidence that supports a charge cannot be harmless error" and that accordingly "[w]e must therefore reverse [James's] conviction for strangulation, subject, however, to possible retrial." *Id.* (citing *Stahl v. State*, 686 N.E.2d 89 (1997) ("[I]f all the evidence, even that erroneously admitted, is sufficient to support the jury verdict, double jeopardy does not bar a retrial on the same charge.").

[11] The evidence presented revealed that Rogers was walking on Interstate 465 when she entered the vehicle of the Good Samaritan. Later, Trooper Berfield, who was driving southbound on the interstate, received a dispatch regarding the vehicle, and he turned around and proceeded to the vehicle. It is the State's burden to lay a proper foundation for evidence it seeks to admit. Here, the State failed to establish any length of time as to how long Rogers was in the car

with the Good Samaritan before Trooper Berfield came upon the scene, nor did the State show that Rogers remained under the stress of excitement from the time of an incident with Young until she spoke with Trooper Berfield. In admitting these statements, the court stated: "We have not established how much time elapsed during this time frame. I think that [the State] is correct there is no limitation on the excited utterance. If the Officer testifies that she was still very excited, I think you accept the scope wise." Transcript at 17. It is unclear exactly what the trial court meant, but we find that the State did not establish that Rogers was *still* under the stress of excitement caused by the startling event or whether she had the opportunity for thoughtful reflection before Trooper Berfield came upon the scene. Thus, we find that the court abused its discretion when it admitted Trooper Berfield's testimony regarding Rogers's statements under the excited utterance exception.

[12] Also, similar to *Young*, we cannot say that the error was harmless. Rogers's statements were not cumulative and constituted the only evidence indicating that an incident between Young and Rogers had occurred and provided the identity evidence necessary to link Young to the incident, including his name,

the car he drove, and where he could be located.[2]  We therefore reverse Young's

conviction for battery as a class B misdemeanor, subject to retrial.[3]

### Conclusion

[13]  For the foregoing reasons, we reverse Young's conviction for battery as a class

B misdemeanor, subject to retrial.

[14]  Reversed.


Kirsch, J., and Mathias, J., concur.

---

[2] We note that the State does not argue that some or all of the statements were admissible for another purpose, and the trial court made clear that it was accepting the statements for the truth of the matters asserted and not as course of investigation testimony.

[3] To the extent that Young challenges the sufficiency of the evidence to convict him, we note that Young told Officer McDermott that he was driving with Rogers on the highway, that they were arguing in the car, that he told Rogers to "get the f--- out the car," Exhibit 6 at Officer McDermott Camera 1, 11:25:58- 11:26:02, and that when she refused he "nudged her" out of the vehicle.  Transcript at 42.  *See Stahl v. State*, 686 N.E.2d 89 (1997) ("[I]f all the evidence, even that erroneously admitted, is sufficient to support the jury verdict, double jeopardy does not bar a retrial on the same charge.").