**STATE of Indiana, Appellant–Plaintiff,**

v.

**Tracey Lamont MARTIN,**
**Appellee–Defendant.**

**No. 02A04–0704–CR–219.**

Court of Appeals of Indiana.

April 25, 2008.

Steve Carter, Attorney General of Indiana, Cynthia Ploughe, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellant.

Quinton L. Ellis, Fort Wayne, IN, Attorney for Appellee.

**OPINION**

CRONE, Judge.

### Case Summary

The State of Indiana appeals from the trial court's directed verdict in favor of Tracey Lamont Martin, who was charged with domestic battery as a class D felony. We reverse.

### Issue

The State raises as a reserved question of law the issue of whether the trial court erred in determining that a witness's pre-

---

trial statements were testimonial and thus inadmissible at trial.

## Facts and Procedural History

On the afternoon of September 20, 2006, a motorist called 911 after observing a woman, later identified as Keyona Brooks, leave a vehicle at a stop light and run toward the sidewalk with blood and saliva streaming out of her mouth. The woman appeared to be "very shaken and upset." Tr. at 70. Fort Wayne Police Department Officers Darryl Caudill and Heather Hoffman were dispatched to the scene. The call was identified as "priority one," meaning that there was a "shooting, stabbing, problem unknown—anything that needs urgent assistance." *Id.* at 95.

Officers Caudill and Hoffman arrived on the scene within two minutes of the dispatch and found Brooks sitting on a fencepost near the road. She was "crying, spitting out blood, hysterical." *Id.* at 96. There was blood "all over her face[.]" *Id.* The officers attempted to determine the nature of the situation. Brooks told them that her boyfriend had struck her in the face during an argument in the car. She also told them that while she was trying to remove their children from the car, he had driven off with the car door open. She described the car and provided Martin's full name, and Officer Caudill communicated this information to other officers in the area. The officers believed that Brooks was concerned for her children's safety because she appeared to be very upset, she stated that she did not know where Martin had taken the children, and she had seen him drive away with the car door open. Officer Hoffman testified that she was concerned about Martin's actions and whereabouts because "we didn't know what kind of state of mind he was in." *Id.* at 97.

The State charged Martin with class D felony domestic battery. Brooks was not available to testify at trial. Martin moved to suppress Brooks's statements to police, arguing that their admission would violate his Sixth Amendment right to confrontation. The trial court conducted a hearing outside the presence of the jury and then ruled that Brooks's statements to the officers were testimonial and thus inadmissible. The trial court entered a directed verdict in Martin's favor. The State now appeals as a reserved question of law the trial court's decision to exclude Brook's statements to police.

## Discussion and Decision

■ Pursuant to Indiana Code Section 35-38-4-2(4), the State may appeal a question of law following a defendant's acquittal. If we reverse a trial court's judgment of acquittal, however, the State is barred, on double jeopardy grounds, from retrying the defendant. *State v. Casada,* 825 N.E.2d 936, 940 (Ind.Ct.App.2005) (erroneous entry of acquittal by trial court acts as acquittal for double jeopardy purposes). Although the issue addressed is moot, the purpose of this appeal is to provide guidance to trial courts in future cases. *State v. Lloyd,* 800 N.E.2d 196, 198 (Ind.Ct.App. 2003).

■ Martin argued, and the trial court agreed, that the admission of Brook's statement to police would violate his rights pursuant to the Confrontation Clause of the Sixth Amendment to the United States Constitution, which provides: "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." The U.S. Supreme Court has held that the Confrontation Clause bars "admission of testimonial statement of a witness who did not appear at trial unless he was unavailable to testify,[1] and the defendant had had a prior

---

1. According to the State, Brooks did not testi-     fy at Martin's trial, nor was she called as a

opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 53–54, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). The question in the instant case is whether Brook's statements to police were testimonial or nontestimonial. While the Supreme Court did not define these terms in *Crawford*, it later explained the distinction in *Davis v. Washington*, 547 U.S. 813, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006):

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

*Id.* at 822, 126 S.Ct. 2266. In *Davis*, The Supreme Court considered several factors regarding the statements at issue: (1) whether the declarant was describing events "as they were actually happening" or past events; (2) whether the declarant was facing an ongoing emergency; (3) whether the nature of what was asked and answered was such that the elicited statements were necessary to be able to resolve the present emergency rather than simply to learn about past events; and (4) the level of formality of the interview. *Id.* at 827, 126 S.Ct. 2266 (emphasis removed).

Another panel of this Court recently applied these factors in a somewhat similar case. In *Collins v. State*, Jerry Downs was with Collins when Collins shot a woman in the head, killing her. 873 N.E.2d 149, 152 (Ind.Ct.App.2007), *trans. denied*, *cert. denied*. Shortly after the murder, Collins drove Downs home. After removing dozens of marijuana plants from his garage, Downs called 911 and told the dispatcher that he had seen Collins shoot a woman. He identified himself and said that the shooting had occurred in a white vehicle, he did not know Collins's whereabouts, and Collins had told him that if he told anyone about the shooting, Collins would kill him. Based on the tone of Downs's voice and his repeating of sentences, the 911 dispatcher concluded that Downs was "very upset[.]" *Id.* at 153.

In *Collins*, this Court considered the *Davis* factors, concluding first that "although Downs primarily told [the dispatcher] of past events, those occurrences served to establish whether Collins posed a *present* danger[.]" *Id.* at 154–55. Second, the Court determined that despite his delay in calling 911, Downs was facing an ongoing emergency because he had just seen Collins murder someone, he did not know where Collins was, and Collins had threatened to kill him if he told anyone what he had seen. Third, the Court found that the dispatcher's questions sought to resolve the present emergency by establishing facts that would aid in the shooter's apprehension, such as his identity, the type of vehicle he might be driving, and his possible whereabouts. Finally, the interview occurred during a "very informal 911 call" during which Downs was agitated and upset. *Id.* at 155.

While the instant case did not involve a crime as serious as murder, we think the *Collins* analysis is relevant here. Brooks did tell Officers Caudill and Hoffman about past events, alleging that Martin had hit her and driven away with her children

---

witness. Martin has not raised the issue of her availability (or unavailability) to testify in this appeal, nor did he do so before the trial court. The issue is therefore waived for our

review. *See Van Winkle v. Nash*, 761 N.E.2d 856, 859 (Ind.Ct.App.2002) (holding that failure to raise an issue before the trial court waives that issue for appellate review).

in a car with one door open, but as in *Collins*, this information was relevant to establish whether this man posed a present danger, particularly to Brooks's children. Second, although Brooks herself was not in danger when she made these statements to police, she was experiencing an ongoing emergency in that she did not know where her children were and she feared for their safety. Third, the officers' questions to Brooks sought to resolve the ongoing emergency by establishing Martin's identity, the type of car he was driving, and his state of mind. Finally, at the time of her conversation with the officers, Brooks was sitting by the side of the road just minutes after watching her children being driven away by the man who had battered her. She was hysterical and had blood all over her face. Clearly, there was little formality to this situation.

In sum, we must conclude that the circumstances of the officers' interrogation of Brooks objectively indicate that its primary purpose was to assist police in resolving an ongoing emergency.[2] Therefore, Brooks's statements to police were nontestimonial, and the trial court abused its discretion in excluding them.

Reversed.

BAILEY, J., and NAJAM, J., concur.

[2]. Martin argues that the instant case is analogous to *Hammon v. Indiana*, 547 U.S. 813, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006), the companion case to *Davis*. In *Hammon*, police responded to a reported domestic disturbance at the home of Amy and Herschel Hammon. The Supreme Court pointed to many factors in support of its determination that Amy's statements to police were testimonial, including the following: upon officers' arrival at the scene, Amy and Herschel were in separate areas of the house and there was no argument or violence in progress; Amy told police that "things were fine"; Amy's interrogation was conducted in a separate room, away from Herschel (although he attempted to intervene); Amy was not in immediate danger, nor was she seeking aid when she talked to police; Amy presented a narrative of past events "at some remove in time" from the danger, and police asked Amy to execute an affidavit after the interview. Other than the fact that *Hammon* and the instant case involve incidents of domestic violence, we see few, if any, similarities between the circumstances surrounding the two interrogations.