# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**DEBORAH MARKISOHN**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**BRIAN REITZ**
Deputy Attorney General
Indianapolis, Indiana



**FILED**

Feb 22 2013, 9:21 am

**CLERK**
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JOSHUA KING, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1204-CR-351 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

**APPEAL FROM THE MARION SUPERIOR COURT**
The Honorable Carol J. Orbison, Judge
The Honorable Anne M. Flannelly, Commissioner
Cause No. 49G22-1202-FC-6919

**February 22, 2013**

**OPINION - FOR PUBLICATION**

**MAY, Judge**

Joshua King appeals his convictions of Class C felony battery,[1] Class A misdemeanor battery,[2] and Class D felony strangulation.[3] He submits four issues for our review, which we consolidate and restate as:

1.      Whether the trial court violated King's rights under the Confrontation Clause when it admitted testimony by Officer Philip Rossman;

2.      Whether the trial court abused its discretion when it admitted recordings of calls King made to the victim from jail; and

3.      Whether the trial court erroneously listed one of King's convictions as a Class C felony instead of a Class A misdemeanor.

We affirm and remand.

## FACTS AND PROCEDURAL HISTORY

At approximately noon on January 30, 2012, C.M. ran into the leasing office of her apartment complex and told the assistant manager, Karmen Carpenter, that she had been attacked by King, the father of her child. C.M. was crying, had injuries to her face, neck, and wrist, and said her child was still with King in her apartment. Carpenter called 911, and Officer Philip Rossman arrived at the leasing office. Still visibly shaken, C.M. told Officer Rossman what happened, and he went to C.M.'s apartment to speak to King and retrieve C.M.'s child. When he arrived at the apartment, he discovered King leaving the apartment with the child. Officer Rossman asked King to sit down in the apartment and he returned the

---

[1] Ind. Code § 35-42-2-1(a)(8).
[2] Ind. Code § 35-42-2-1(a)(1).
[3] Ind. Code § 35-42-2-9.

child to C.M. C.M. was taken to the hospital and Officer Rossman arrested King.

At the hospital, Nurse Patrisha Anderson examined C.M., who told Anderson she and King had argued about money, and then King had pushed her down the hallway, knelt on her with his knee in her spine, and attempted to strangle her. When C.M. briefly escaped his grasp, King picked up a television and threw it against the wall. He then reengaged C.M. in the physical altercation. As King and C.M. fought, C.M. fell over the television. King squeezed C.M.'s stomach and, knowing she was pregnant, told her she was not going to have the baby. C.M. was then able to flee to the leasing office.

The State charged King with two counts of Class C felony battery and one count of Class D felony strangulation. While in the Marion County Jail, King called C.M. at least twice and discussed the details of the crime. The trial court found King guilty of Class C felony battery, Class A misdemeanor battery as a lesser included offense of the second count of Class C felony battery, and Class D felony strangulation. It sentenced him to four years, with two years to be served on work release and two years suspended to probation.

## DISCUSSION AND DECISION

### 1. Confrontation Clause

We review the trial court's decision regarding admissibility of evidence for an abuse of discretion. *Lindsey v. State*, 916 N.E.2d 230, 238 (Ind. Ct. App. 2009), *trans. denied.* Thus, we reverse only if the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Id.* We will not reweigh evidence, and we consider any conflicting evidence in favor of the trial court's ruling. *Id.* However, we must also consider

the uncontested evidence favorable to the defendant. *Id.*

Errors in the admission or exclusion of evidence are to be to be disregarded as harmless unless they affect the substantial rights of a party. Ind. Trial Rule 61; *Hardin v. State*, 611 N.E.2d 123, 131 (Ind. 1993). In a bench trial,

> the harm from any evidentiary error is lessened. In bench trials, we presume that the court disregarded inadmissible evidence and rendered its decision solely on the basis of relevant and probative evidence. Any harm from evidentiary error is lessened, if not completely annulled, when the trial is by the court sitting without a jury. Also, any error in the admission of evidence which is merely cumulative of evidence properly admitted is harmless.

*Berry v. State*, 725 N.E.2d 939, 943 (Ind. Ct. App. 2000) (internal citations omitted).

The Confrontation Clause, embodied in the Sixth Amendment to the United States Constitution, provides that "in all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." The Indiana Constitution extends a similar guarantee. *See* Ind. Const., Art. 1, § 13(a) ("In all criminal prosecutions, the accused shall have the right to . . . meet the witnesses face to face[.]). The Confrontation Clause prohibits the admission of an out-of-court statement if it is testimonial, the declarant is unavailable, and the defendant had no prior opportunity to cross-examine the witness. *Crawford v. Washington*, 541 U.S. 36, 42 (2004). C.M. did not testify at King's trial. King argues testimony given by Officer Rossman regarding what C.M. told him was testimonial, and therefore its admission violated the Confrontation Clause. We disagree.

To determine whether a statement is testimonial, we look at the primary purpose of the conversation. *Turner v. State*, 953 N.E.2d 1039, 1055 (Ind. 2011). If the circumstances

4

indicate the purpose of the interrogation is "to enable police assistance to meet an ongoing emergency," then the statements are considered non-testimonial and not subject to the Confrontation Clause. *Davis v. Washington*, 547 U.S. 813, 822 (2006). However, if circumstances indicate the primary purpose of the conversation is to "prove past events potentially relevant to later criminal prosecution," then the statements are considered testimonial and protected by the Confrontation Clause. *Id*.

When determining the nature of the statement, we consider:

(1) whether the declarant was describing events "as they were actually happening" or past events; (2) whether the declarant was facing an ongoing emergency; (3) whether the nature of what was asked and answered was such that the elicited statements were necessary to be able to resolve the present emergency rather than simply to learn about past events; and (4) the level of formality of the interview.

*State v. Martin*, 885 N.E.2d 18, 20 (Ind. Ct. App. 2008).

Police investigation of domestic violence involves a unique set of circumstances:

In domestic dispute situations, responses to police officers' initial inquiries may often be, but are not always, non-testimonial, because the officers may need to investigate and identify the people involved in order to assess the situation, the threat to their safety, and the potential danger to the victim. *Davis* [*v. Washington*, 547 U.S. 813,] 832 (2006) (citing *Hiibel v. Sixth Judicial Dist. Court of Nevada, Humboldt County*, 542 U.S. 177, 186, 124 S.Ct. 2451, 159 L.Ed.2d 292 (2004)). . . . . However, even in domestic violence cases, the zone [of danger] can extend beyond the victim. *See Martin*, 885 N.E.2d at 21 (holding that even though the declarant was not in danger, "she was experiencing an ongoing emergency because she did not know where her children were and she feared for their safety").

*Young v. State*, 980 N.E. 2d 412, 419 (Ind. Ct. App., 2012).

Officer Rossman arrived at the leasing office two or three minutes after Carpenter's 911 call. He observed "swelling and redness" around C.M.'s right eye and "red marks" around her throat. (Tr. at 7.) C.M. was "upset and crying." (*Id.*) She identified her attacker as King, and indicated King had her eleven-month-old son with him and she was concerned for the child's safety. Based on C.M.'s demeanor, the proximity in time to the infliction of her injuries, and the immediate possibility of danger to her child, we hold C.M.'s statements to Officer Rossman were non-testimonial and therefore admissible. *See Martin*, 885 N.E.2d at 21 (holding victim's statements to police to be non-testimonial because victim was injured and concerned for the welfare of her children, who was in the custody of her attacker).[4]

2.    Jailhouse Phone Calls

During trial, the State introduced, over King's objection, a recording of two phone conversations King had with C.M. from jail. During these recordings, King and C.M. discussed the details of the crime. King argues the calls were inadmissible hearsay. We disagree.

Generally, recordings of telephone calls made from jail are admissible when the defendant discusses the crime for which he is incarcerated. *Baer v. State*, 866 N.E.2d 752, 762 (Ind. 2007), *reh'g denied*. The detective investigating the incident testified King and

---

[4] King argues the trial court abused its discretion when it admitted Carpenter's testimony regarding what C.M. told her about King's attack because the statements were inadmissible hearsay. King also argues the trial court abused its discretion when it admitted statements and medical records from C.M.'s visit with Nurse Patrisha Anderson in the emergency room following the attack. Any possible error in the admission of that evidence was, as most, harmless because the testimony of Carpenter and Nurse Anderson was cumulative of Officer Rossman's testimony, which was properly admitted. *See Cole v. State*, 970 N.E.2d 779, 784 (Ind. Ct. App. 2012) (admission of hearsay is not grounds for reversal where it is merely cumulative of other evidence admitted).

C.M. "talked about the incident, the disturbance that [the detective] was investigating." (Tr. at 121.) Because King discussed the crime for which he was incarcerated during the calls, the trial court did not abuse its discretion when it admitted the calls into evidence. *See Baer*, 866 N.E.2d at 762.

### 3.　Abstract of Judgment

King argues, and the State concedes, the Abstract of Judgment erroneously lists King's second count of battery as a Class C felony instead of as a Class A misdemeanor. During trial the court stated King's conviction was of Class A misdemeanor battery and, in accordance therewith, the court pronounced a one-year sentence for that crime. Compare Ind. Code § 35-50-2-6 (sentence for Class C felony is two to eight years) with Ind. Code § 35-50-3-2 (sentence for Class A misdemeanor shall be not more than one year). Therefore, we remand for correction of the Abstract of Judgment to accurately reflect King's second battery conviction is a Class A misdemeanor.

## CONCLUSION

The trial court did not abuse its discretion when it admitted Officer Rossman's testimony. Further, any error in admission of evidence from Carpenter and Nurse Anderson was harmless as cumulative of Officer Rossman's testimony. Finally, the trial court did not abuse its discretion when it admitted the recordings of calls King made to C.M. from jail. However, the Abstract of Judgment incorrectly lists King's second battery conviction as a Class C felony, and we remand for correction of the Abstract of Judgment.

7

Affirmed and remanded.

NAJAM, J., and KIRSCH, J., concur.