**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jul 16 2014, 10:08 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**CAROLINE B. BRIGGS**
Lafayette, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JUSTIN F. ROEBEL**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| MAURICE AMOS, JR., ) | |
| ) | |
| Appellant-Defendant, ) | |
| ) | |
| vs. ) | No. 27A02-1309-CR-840 |
| ) | |
| STATE OF INDIANA, ) | |
| ) | |
| Appellee-Plaintiff. ) | |

APPEAL FROM THE GRANT CIRCUIT COURT
The Honorable Mark E. Spitzer, Judge
Cause No. 27C01-1211-MR-251

**July 16, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

Maurice Amos, Jr. appeals his convictions for murder, a felony; attempted murder, a Class A felony; receiving stolen auto parts, as a Class D felony; and for being an habitual offender, following a jury trial. Amos raises seven issues for our review, which we reorder and restate as follows:

1. Whether the trial court abused its discretion when it admitted testimony regarding the dying victim's identification of her shooter at the crime scene.

2. Whether the trial court abused its discretion when it permitted a witness to testify that she had "assumed" Amos shared his family's last name based on her personal knowledge of Amos and his family.

3. Whether the trial court abused its discretion under Indiana Evidence Rule 404(b) when it permitted the State to introduce evidence that Amos owed overdue taxes.

4. Whether the trial court erred when it permitted the only eyewitness's uncle to testify and partially corroborate the eyewitness's testimony.

5. Whether Amos suffered any prejudice from an officer's testimony regarding the likely sequence in which bullets struck the decedent's vehicle.

6. Whether the trial court abused its discretion when it denied Amos's last-minute motions to continue.

7. Whether the State presented sufficient evidence to support his adjudication as an habitual offender.

We affirm.

## FACTS AND PROCEDURAL HISTORY

In the late evening hours of November 1, 2012, Cletus Luster went to 3021 South Branson Street in Marion to sell one ounce of marijuana to Amos for $300. Danielle Stalling, who also knew Amos, agreed to drive Cletus to the location. Stalling parked her

2

vehicle in the alley behind the residence, and Amos came out of the residence and met them at the vehicle. After a brief discussion, Amos went back inside the residence to show his family the marijuana and see if they wanted it. Amos instructed Stalling to move her vehicle into a nearby gravel parking spot, which she did. Her car was facing Amos's house.

Amos then exited the house with a firearm and starting shooting into Stalling's car. Amos fired at least fifteen shots. Stalling was struck eight to ten times in the chest and abdomen. Cletus was also struck multiple times and heard Stalling yell out "Reesie," which was Amos's nickname. Tr. at 271. Cletus then blacked out momentarily, and when he awoke he saw Amos in the front driver's side of the car. Cletus "act[ed] like [he] was dead" until Amos left. Id. at 277. As Amos was returning to the house, Cletus grabbed his own firearm, shot at Amos, and then fled the scene.

At 10:19 p.m. the Marion Police Department received a report of shots fired. Officer Chris Butchie arrived at the scene and observed Stalling lying on the ground with multiple gunshot wounds. Officer Butchie observed that Stalling was having trouble breathing, and she stated, "please don't let me die." Id. at 114. Officer Butchie "knew that her health was deteriorating quickly" and he "asked her . . . who shot you." Id. Stalling twice responded, "Maurice Green." Id. Stalling also told the officer that "Cletus" had been in the passenger seat. Id. Stalling died about thirty minutes later, before she could be treated at a hospital.

Across the alley and "just feet away" from the crime scene, officers observed a Nissan Maxima. Id. at 462. When "nobody had come and asked about the vehicle or inquired about it," the officers ran the license plate number and the vehicle identification

3

number and learned that the vehicle had been reported stolen in Chicago. Id. Officers had the vehicle impounded. Thereafter, officers searched the vehicle and recovered an IRS letter addressed to Amos that was a "[r]eminder of overdue taxes for 2006." State's Exh. 130. Officers also recovered letters addressed to Amanda Green and Shakara Green, Amos's mother and sister, respectively. And officers recovered a box of Newport-brand cigarettes, which matched the brand of a half-smoked cigarette the officers had collected from the crime scene. The cigarette collected from the crime scene contained Amos's DNA.

On November 7, 2012, the State charged Amos with murder, a felony; attempted murder, a Class A felony; possession of a firearm by a serious violent felon, a Class B felony; receiving stolen auto parts, as a Class D felony; and with being an habitual offender. After a continuance, the trial court set Amos's jury trial for July 29, 2013. On July 26—the Friday before the Monday trial was to commence—and again at the start of the trial on July 29, Amos moved to continue the trial so that he could obtain new counsel. The court denied Amos's requests.

At the ensuing trial, the State called Cletus to testify, and he described the November 1 shooting. Phone records corroborated Cletus's testimony that he and Amos had arranged to meet during the evening of November 1. Cletus's uncle, Mark Luster, who was not on the State's witness list, testified that Cletus had told him on November 1 that he had been shot by Maurice Green. Three responding officers, including Officer Butchie, testified that Stalling had said at the scene that she had been shot by Maurice Green. Five witnesses testified that Amos and/or his family had the last name of Green. One of those witnesses was the aunt of Amos's mother. Another was Latosha Georgia, a

4

friend of Amos's, who testified that she had "assumed" Amos's last name was Green because it was his family's last name. Tr. at 681. The State also had admitted into the record the DNA evidence from the cigarette at the crime scene and items recovered from the Nissan Maxima, including the IRS letter. And Marion Police Department Officer Robin Young testified, based on his training and experience, to the likely sequence in which the bullets struck Stalling's vehicle.

The jury found Amos guilty of murder, attempted murder, and receiving stolen auto parts. At the ensuing trial on Amos's status as an habitual offender, the State introduced certified records that demonstrated that Amos had previously been convicted of two Class C felonies in June of 2011 and a Class D felony, along with several misdemeanors, in October of 2007. However, the judgment of conviction on the October 2007 charges erroneously stated that Amos pleaded guilty to a "Class D Misdemeanor." State's Exh. 246 at 13. The jury found Amos guilty of being an habitual offender, and the court entered its judgment and sentenced Amos accordingly. This appeal ensued.

## DISCUSSION AND DECISION

### Standards of Review

Amos raises several issues for our review, which alternate between issues preserved for appellate review and claims of fundamental error. For the preserved issues, Amos asserts that the trial court abused its discretion in various ways. A trial court abuses its discretion if its decision is clearly against the logic and effect of the facts and circumstances before the court or if the court misapplies the law. See Speybroeck v. State, 875 N.E.2d 813, 818 (Ind. Ct. App. 2007).

As for fundamental error:

> A claim that has been waived by a defendant's failure to raise a contemporaneous objection can be reviewed on appeal if the reviewing court determines that a fundamental error occurred. The fundamental error exception is "extremely narrow, and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process." The error claimed must either "make a fair trial impossible" or constitute "clearly blatant violations of basic and elementary principles of due process." This exception is available only in "egregious circumstances."

Brown v. State, 929 N.E.2d 204, 207 (Ind. 2010) (citations omitted).

## Issue One:  Stalling's Dying Declarations

We first address Amos's argument that the trial court abused its discretion when it admitted testimony regarding Stalling's identification of her shooter at the crime scene. Out-of-court statements offered in court for the truth of the matter asserted are generally inadmissible hearsay. Ind. Evidence Rule 802. However, one among many exceptions to the inadmissibility of hearsay is when the out-of-court statement is "[a] statement that the declarant, while believing the declarant's death to be imminent, made about its cause or circumstances." Evid. R. 804(b)(2). The admissibility of such a "dying declaration" is based on "the belief that persons making such statements are highly unlikely to lie." Idaho v. Wright, 497 U.S. 805, 820 (1990).

Amos asserts that Stalling's declarations were not admissible because the evidence does not show that she had "abandoned all hope of recovery." Appellant's Br. at 42. It is true that, to be admissible as a dying declaration, the statement "must be made by a person who knew death was imminent and had abandoned all hope of recovery." Wright v. State, 916 N.E.2d 269, 275 (Ind. Ct. App. 2009), trans. denied. But,

> [i]n order to determine if a declarant made statements with the belief that death was imminent while having abandoned all hope of recovery, the trial

6

court may consider the general statements, conduct, manner, symptoms, and condition of the declarant, which flow as the reasonable and natural results from the extent and character of his wound, or state of his illness.

Id. (quotations omitted).

Here, there is no question that the trial court acted within its discretion when it concluded that Stalling's statements were admissible dying declarations. Stalling was shot eight to ten times in the chest and abdomen. Both of her lungs had been pierced, along with other extensive internal organ damage. Upon Officer Butchie's arrival on the scene just minutes after the report of shots fired, he observed that Stalling was lying on the ground and having trouble breathing. She pleaded, "please don't let me die" before he asked her who had shot her. Transcript at 114. Stalling died about thirty minutes later, before she could be treated at a hospital. In light of Stalling's statements, conduct, manner, symptoms, and condition, as well as the reasonable and natural results from the extent and character of her extensive wounds, the trial court properly concluded that Stalling's statements were admissible dying declarations.[1]

---

[1] Amos makes passing references to the Confrontation Clause and Crawford v. Washington, 541 U.S. 36 (2004). However, we have held that "the rule in Crawford has a well-recognized exception for dying declarations." Wright, 916 N.E.2d at 275. As such, we do not consider these comments by Amos in his brief on appeal. Further, because we hold that Stalling's statements were admissible dying declarations, we need not consider the parties's alternative arguments as to whether the statements were admissible excited utterances.

## Issue Two:  Latosha Georgia's Testimony

We next consider Amos's argument that the trial court abused its discretion when it permitted Latosha Georgia to testify that she had "assumed" Amos's last name was Green because it was his family's last name.  Id. at 681.  Indiana Evidence Rule 602 permits a witness to testify to her personal knowledge, and Georgia testified that she had known Amos for seven years, that they had been "pretty good friends," and that they had had a sexual relationship.  Id. at 680.  She also testified that she knew his family.  She then stated, based on her personal knowledge, that she had assumed Amos's last name was Green.  This was a permissible inference based on her personal knowledge, and we cannot say the trial court abused its discretion when it overruled Amos's objection and permitted this testimony.  Moreover, Georgia was one of five witness who testified that Amos and/or his family had the last name of Green.  As such, her testimony was merely cumulative to that of other witnesses and cannot be the basis for reversible error.  See, e.g., King v. State, 985 N.E.2d 755, 757 (Ind. Ct. App. 2013), trans. denied.

## Issue Three:  The IRS Letter

Amos also challenges the admissibility of the IRS letter seized from the Nissan Maxima at the scene of the crime.  In particular, Amos asserts that the trial court abused its discretion when it permitted the State to introduce the IRS letter over his objection that the State had not given him notice in advance of trial that the State would use this

evidence, and that the State did not demonstrate good cause during the trial to excuse its lack of pretrial notice.[2]

Evidence Rule 404(b) provides:

(1)   Prohibited Uses.   Evidence of other crimes, wrongs, or acts is not admissible to prove a person's character in order to that on a particular occasion the person acted in accordance with the character.

(2)   Permitted Uses; Notice in a Criminal Case.   This evidence may be admissible for another purpose, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.   On request by defendant in a criminal case, the prosecutor must:

(A) provide reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial; and

(B) do so before trial—or during trial if the court, for good cause shown, excuses lack of pretrial notice.

We agree with the State that Rule 404(b) was not implicated by the IRS letter. The letter merely stated that it was a "[r]eminder of overdue taxes for 2006." State's Exh. 130. No other text from the body of the letter was admitted into the record, and this simple statement, standing alone, does not demonstrate an act prohibited by Rule 404(b). Indeed, Amos's tax delinquency may have occurred in good faith or with good reason, and Amos cites no authority for his argument that a tax bill is a per se bad act under Rule 404(b). Moreover, the IRS letter was not offered to prove that Amos had a criminal propensity and therefore engaged in the charged conduct. See Burgett v. State, 748 N.E.2d 571, 579 (Ind. Ct. App. 2001), trans. denied. Rather, the letter was offered because it linked Amos both to the stolen vehicle and to the scene of the shooting. Thus,

---

[2]   Insofar as Amos argues that the IRS letter was inadmissible hearsay, he did not object to the letter on those grounds in the trial court and his argument for fundamental error on appeal is not supported by cogent reasoning. Thus, we do not consider this argument. Ind. Appellate Rule 46(A)(8)(a).

we cannot say that the trial court abused its discretion when it permitted the State to introduce this letter into the record.[3]

## Issue Four: Mark Luster's Testimony

We next consider Amos's argument that the trial court erred when it permitted Cletus's uncle, Mark Luster, to testify. Amos's challenge to Mark's testimony is two-fold. First, Amos asserts that Mark's testimony was inadmissible hearsay. Second, Amos argues that the trial court committed fundamental error when it permitted the State to call a witness not named on the State's witness lists.

We first address Amos's argument that the trial court abused its discretion when it overruled his objection to Mark's testimony on hearsay grounds.[4] We hold that Amos cannot demonstrate reversible error on this issue. Even if Mark's testimony was inadmissible hearsay, he was simply one of a number of witnesses who identified Amos. As such, his testimony was cumulative to that of other witnesses and cannot be the basis for reversible error. See, e.g., King, 985 N.E.2d at 757.

Amos also alleges fundamental error in permitting Mark to testify even though he was not named on the State's witness list. As our Supreme Court has held:

> Generally, we have not deemed the trial court's decision to permit the State to introduce testimony in violation of a discovery order to list witnesses to be an abuse of discretion when the record indicates that the State's act was

---

[3] In discussing this issue, Amos asserts that, "[a]lthough being behind on taxes may not be the worst offense someone can commit, the Defendant did not testify and there were other inferences of misconduct." Appellant's Br. at 28. Amos then discusses these alleged instances of "other . . . misconduct." Id. We do not read Amos's discussion of these other alleged instances as an independent claim of error but, rather, to buttress his argument that the admission of the IRS letter was prejudicial. Insofar as Amos intended these other alleged instances to be freestanding claims of reversible error, Amos did not object to these alleged errors at trial and his arguments on appeal do not cogently demonstrate fundamental error. App. R. 46(A)(8)(a).

[4] The State asserts that this issue was not properly preserved for appeal, but the State is incorrect.

10

not intentional or deliberate, where alternative sanctions mitigated any prejudice to defendant, or where defendant has not shown that he was unduly surprised or prejudiced.

Wiseheart v. State, 491 N.E.2d 985, 990 (Ind. 1986); see also Lund v. State, 264 Ind. 428, 345 N.E.2d 826 (1976) (when there is no evidence that the State's breach was an act of bad faith or deliberate suppression, then the trial court does not err by allowing a witness to testify who was not disclosed to defendant until the day before the trial). But, because Amos's argument on this issue is one of fundamental error, the trial court's decision to permit Mark's testimony must have been so prejudicial to Amos that it made a fair trial impossible. See Brown, 929 N.E.2d at 207.

Amos cannot demonstrate fundamental error on this issue. As suggested by our Supreme Court in Wiseheart, trial courts have broad discretion in permitting an undisclosed witness to testify, and Amos has made no showing that the State's act was intentional or deliberate, or that the trial court here exercised its discretion in such a flagrant manner that it denied Amos a fair trial. Amos's argument that fundamental error occurred on this issue must fail.

### Issue Five: Officer Young's Testimony

Amos next asserts that the trial court abused its discretion when it permitted Officer Young to testify to the likely sequence in which the bullets struck Stalling's vehicle. Amos objected to Officer Young's testimony on the basis that he was not qualified to express such an opinion.[5] On appeal Amos asserts that the admission of this testimony was erroneous and "highly prejudicial." Appellant's Br. at 15.

---

[5] The State asserts that this issue was not properly preserved for appeal and, therefore, should be reviewed as fundamental error, but we disagree.

11

We need not consider whether Officer Young was qualified to testify to the likely sequence of the gunshots because Amos suffered no prejudice from the admission of this testimony. It is well-established that "errors in the admission of evidence are to be disregarded as harmless error unless they affect the substantial rights of a party." Sibbing v. Cave, 922 N.E.2d 594, 598 (Ind. 2010) (quotations omitted). To determine whether the admission of evidence affected a party's substantial rights, we assess the probable impact of the evidence upon the jury. Id.

Here, Officer Young's testimony regarding the sequence in which the bullets struck Stalling's vehicle likely had a minimal impact on the jury's decision. The jury had before it Cletus's eyewitness testimony, phone records corroborating Cletus's testimony, Stalling's dying declarations, DNA evidence linking Amos to the crime scene, the letters found in the stolen vehicle also at the crime scene, numerous witnesses who identified Amos as Maurice Green, and Mark's testimony. We doubt that the jury was all that concerned with the order in which the bullets actually struck Stalling's vehicle. And we reject Amos's assertion on appeal that this evidence somehow corroborated Cletus's testimony, when Cletus did not testify as to the sequence in which the shots struck the vehicle. Thus, any error in the admission of this testimony was harmless.[6]

## Issue Six: Motion to Continue

We next address Amos's argument that the trial court abused its discretion when it denied his motions to continue made on the Friday before his Monday trial and again at

---

[6] For the same reasons, insofar as Amos asserts fundamental error in Officer Young's testimony "about fingerprints and DNA," Appellant's Br. at 17, Amos's argument cannot succeed. See Knapp v. State, ___ N.E.3d ___ (Ind. 2014) (holding there was no fundamental error when the challenged evidence "had little potential to sway the jury's determination of Defendant's guilt based on the remaining evidence").

12

the start of the trial. The trial court did not abuse its discretion for two reasons. First, there is no right to a last-minute motion to continue in a criminal trial for the purposes of hiring new counsel. Lewis v. State, 730 N.E.2d 686, 688-90 (Ind. 2000). Second, to prevail on his claim, Amos must demonstrate that he was prejudiced by the court's decision. See, e.g., Stafford v. State, 890 N.E.2d 744, 750 (Ind. Ct. App. 2008). We agree with the State that Amos "argues that he was prejudiced because the State had not yet disclosed [Mark] as a potential witness and had not included" the alleged Rule 404(b) evidence in its pretrial notice to Amos. Appellee's Br. at 26. But, as explained above, Amos's counsel objected to Mark's testimony on the basis of hearsay, not surprise, and Rule 404(b) was not implicated by the State's evidence. Thus, we reject Amos's assertion that he was prejudiced by the trial court's denial of his last-minute motions to continue.

**Issue Seven: Habitual Offender Adjudication**

Finally, Amos asserts that the State failed to present sufficient evidence to support his adjudication as an habitual offender. When reviewing a claim of sufficiency of the evidence, we do not reweigh the evidence or judge the credibility of the witnesses. Jones v. State, 783 N.E.2d 1132, 1139 (Ind. 2003). We look only to the probative evidence supporting the verdict and the reasonable inferences that may be drawn from that evidence to determine whether a reasonable trier of fact could conclude the defendant was guilty beyond a reasonable doubt. Id. If there is substantial evidence of probative value to support the conviction, it will not be set aside. Id.

To establish that Amos was an habitual offender, the State was required to show that he had "accumulated two (2) prior unrelated felony convictions." Ind. Code § 35-50-

13

2-8. "To be 'unrelated,' the defendant must have committed the second felony after being sentenced for the first and must have been sentenced for the second felony prior to committing the current felony . . . ." Walker v. State, 988 N.E.2d 1181, 1186-87 (Ind. Ct. App. 2013), trans. denied.

The State presented sufficient evidence to demonstrate that Amos was an habitual offender. In particular, the State had admitted into evidence certified and authenticated records of Amos's prior convictions for two Class C felonies in June of 2011 and a Class D felony in October of 2007. On appeal, Amos challenges only the October 2007 records as sufficient because the judgment of conviction on the October 2007 charges erroneously states that Amos pleaded guilty to a "Class D Misdemeanor." State's Exh. 246 at 13. But the charging information for that conviction shows that Amos was charged with a Class D felony, the chronological case summary shows that Amos pleaded guilty to a Class D felony, and Amos's plea agreement unambiguously states that he pleaded guilty to a Class D felony. That the judgment of conviction made an obvious mistake that was in conflict with these other documents does not obviate the jury's reliance on the other documents. We decline Amos's invitation to vacate his habitual offender adjudication.

## Conclusion

In sum, we affirm Amos's convictions in all respects.

Affirmed.

VAIDIK, C.J., and BROWN, J., concur.

14