## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 29 2017, 11:22 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Charles W. Lahey
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Michael Gene Worden
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jefferson Mitchell Dean,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

December 29, 2017

Court of Appeals Case No.
71A03-1704-CR-689

Appeal from the St. Joseph
Superior Court

The Honorable Jeffrey L. Sanford,
Judge

Trial Court Cause No.
71D03-1511-F1-15

**Pyle, Judge.**

# Statement of the Case

[1] Jefferson Mitchell Dean ("Dean") appeals his conviction, following a jury trial, for Level 4 felony child molesting.[1] Dean contends that the trial court used an improper standard of review when the trial court ruled on his motion to suppress his police statement, and he makes policy arguments regarding the tactics used by police interrogators.

[2] Because Dean is appealing following a conviction, his challenge to the trial court's ruling on his motion to suppress would more appropriately be framed as whether the trial court properly admitted the evidence of his police statements at trial. However, Dean waived any admission of evidence argument when he stipulated at trial to the admissibility of the exhibit that contained his police statement as part of a defense strategy. Thus, we will not review Dean's argument regarding the trial court's ruling on his motion to suppress. Nor will we review Dean's policy arguments as they do not present a reviewable appellate issue and amount to a request for an advisory opinion.

[3] We affirm.

# Issue

Whether Dean waived any appellate challenge relating to the admissibility of the exhibit containing his police statement by stipulating at trial to the admissibility of the exhibit.

---

[1] IND. CODE § 35-42-4-3.

# Facts

In August 2015, eight-year-old A.C. told her babysitter that Dean, her stepfather, had inappropriately touched her vaginal area. The babysitter told A.C.'s father about the allegations, and he called the police. A.C.'s father also took her to the hospital for an examination and to the CASIE Center in South Bend for a forensic interview.

Thereafter, on August 20, 2015, Dean went to the police station and was interviewed by Detective Lieutenant Brad Haney ("Detective Haney") of the St. Joseph County Special Victims Unit. Dean was aware that he had been accused of inappropriately touching A.C. Detective Haney asked Dean about his education, and Dean replied that he had finished tenth grade and "read backwards." (State's Ex. 3). The detective carefully explained the Miranda rights and waiver form, and Dean signed it. During this interview ("Interview #1"), Dean denied that he had touched A.C. in an inappropriate manner and suggested that she was lying. At the conclusion of the interview, Dean left the police station.

Three months later, on November 17, 2015, Detective Haney again interviewed Dean at the police station ("Interview #2"). Dean came to the interview knowing that he was going to take a polygraph examination. Detective Sergeant Scott Bryant ("Detective Bryant") advised Dean of his rights, and Dean signed a waiver of rights. Dean also signed a consent to take a polygraph examination, which was administered by Detective Bryant. After the polygraph examination, Detective Bryant told Dean that he had failed the

polygraph examination. Dean later admitted to Detective Bryant that he had touched the front of A.C.'s pants over her clothing and said he did so in order to describe to her where she should not let little boys touch her.

[7] After the polygraph examination, Detective Haney questioned Dean. Dean told the detective that he had caught A.C. with her mother's vibrator. He said because of that incident, he had touched the inside of A.C.'s pants at her waistline to instruct her where little boys should not touch her. Later in the interview, Dean admitted that he had once touched the inside of A.C.'s vagina with the tip of his pinky, and he drew on a diagram to show how far he had inserted his pinky. Dean then stated that he felt bad and wanted to "go through classes and shit." (State's Ex. 5). The detective agreed that Dean probably needed some help or counseling. Detective Haney told Dean that he should write an apology letter to A.C. Dean agreed to do so but said he was not "book smart" or good at writing. (State's Ex. 5). Dean then dictated a letter for A.C. to Detective Haney, and he signed the letter. In this letter, Dean stated as follows:

> I'm sorry for what I did and it wasn't meaning to happen like that. I love you and your sister to death and if we can get over this it will never happen again. I'm sorry about touching you on your private area (vagina), it will never happen again. I would like to start taking classes. Going through this is hurting your mom and your little brother. I just [l]ove you and your brother and sister dearly and [I]'m very sorry for doing it and it will never happen again.

(State's Ex. 8). Dean then told Detective Haney that he was already taking classes and had more scheduled. Dean asked the detective if he could go home, and the detective informed him that he could not because he had "made some admissions" and was in custody. (State's Ex. 5).

[8] Subsequently, the State charged Dean with Level 1 felony child molesting. In May 2016, Dean filed a motion to suppress his statements to Detective Haney during Interview #1 and his statements made to Detective Haney and Detective Bryan during Interview #2 and the polygraph examination. He contended that his statements were not voluntarily made and that he had made "a false confession" because the officers had made "explicit promises" that he would not be incarcerated but would just receive counseling. (App. Vol. 2 at 182).

[9] In July 2016, the trial court held a hearing on Dean's suppression motion. Dean argued that the two police interviews should be suppressed because the statements were involuntary and induced by the police making "express promises[.]" (Tr. Vol. 2 at 10). Dean acknowledged that Interview #1 did not contain a confession. He argued that the video of the polygraph examination that occurred during Interview #2 should not be shown the jury during the upcoming trial. The State agreed and indicated that it was not planning on presenting the video of the polygraph examination at trial and that it was going to redact any reference to the polygraph from the videotapes. Both parties agreed that the videos alone were sufficient for the trial court to decide whether Dean's police statement was voluntary, and neither party presented witnesses.

At the end of the hearing, the trial court took the matter under advisement.[2] Thereafter, the trial court issued an order denying Dean's motion to suppress and ultimately found that Dean's "confession [wa]s a product of rational intellect and not the result of promises or improper influence." (App. Vol. 2 at 169). Dean did not file appeal the denial of his suppression motion.

[10] The trial court held a four-day jury trial on February 21-24, 2017. On the first morning of trial, the State informed the trial court that Dean's counsel intended to stipulate to the admission of the unredacted videos of his police statements (Interview #1 and Interview #2). Dean's counsel confirmed that he "intend[ed] to ask that the unredacted statement be introduced" and that "obviously by stipulating to that, I don't have an objection." (Tr. Vol. 2 at 25).

[11] Later in the pretrial discussions, when the parties were discussing the stipulation, Dean's counsel stated that his "position [wa]s simply that [Dean] w[ould] stipulate to the State introducing the video of Mr. Dean unredacted in complete form" and to include the video of the polygraph examination. (Tr. Vol. 2 at 33, 34). Dean's counsel also explained that he was planning to ask the trial court for a limiting instruction to inform the jury that it should not consider

---

[2] During the hearing, the trial court suggested that Dean, not the State, had the burden of showing that his confession, which he sought to suppress, was involuntary. The trial court suggested that the burden was no longer on the State because Dean had signed a waiver of rights. When Dean disagreed, the trial court suggested that Dean had "a great issue for an appeal." (Tr. Vol. 2 at 9). The State clarified that Dean's waiver of rights form weighed in favor of determining that his statement was voluntary but was not the sole factor in determining the voluntariness. Additionally, the State informed the trial court that it agreed with Dean that the burden was on the State once Dean had asserted that his statement was involuntary.

the police officers' statement that Dean had failed the polygraph as evidence. Dean's counsel explained his defense theory for the admission of the unredacted police statements as follows:

> I think that the entire film needs to be shown because we have an allegation that it was not voluntary and that it was a false confession and it was induced by a promise. And my client [Dean] is going to explain that. I don't see how that point can be made without showing the entire video warts and all. And the fact that it contains a polygraph doesn't bother me as long as the jury is instructed that they are not [to] consider it, and they're not being advised whether he passed it or didn't pass it, and that those results would not be reliable and [would] not be admissible anyway.

(Tr. Vol. 2 at 34).

[12] During opening statements, Dean's counsel told the jury that it would be seeing the videotapes of Dean's police interviews, including the polygraph examination. His counsel stated that Dean had told the police, during the interviews, that he had not touched A.C. and that Dean had only later admitted to touching her because the police had told him that he could get counseling. Dean's counsel contended that Dean's admission was a "false confession induced by trickery." (Tr. Vol. 2 at 53). Additionally, Dean's counsel told the jury that it would hear testimony from A.C. and from Dean and suggested that the jury would have to make its final determination based upon their testimonies.

[13]     During the trial, A.C. testified that Dean, who watched her while her mother worked nights, had touched her vagina with his hands while her clothes were still on her and that he had "move[d] around" his hands while doing so. (Tr. Vol.3 at 18). She testified that he had touched her on the outside of her clothes and had also put his hands in her pants and underwear and had touched her "private part." (Tr. Vol. 3 at 16). A.C. testified that Dean touched her "[o]n the outside" of her vagina and not the inside. (Tr. Vol. 3 at 20). Additionally, she testified that Dean told her not to tell anyone what he had done.

[14]     On the second day of the jury trial, before Detective Haney's testimony, the State informed the trial court that the parties had reached an agreement on the stipulation for the admissibility of the videos of Dean's two police interviews. Interview #1 was State's Exhibit 3, and Interview #2 was State's Exhibit 5. When the State moved to admit State's Exhibit 3 into evidence during Detective Haney's testimony, Dean's counsel stated, "No objection, your Honor." (Tr. Vol. 3 at 100). The trial court then read to the jury the parties' stipulation, which provided as follows:

> Comes now the State of Indiana . . . and the Defendant by counsel . . . and hereby stipulate and agree as follows:
>
> 1. That the Defendant, Jefferson Dean, submitted to a polygraph examination on November 17, 2015.
>
> 2. Detective Sergeant Scott Bryant administered the polygraph examination.

3.  Detective Sergeant Scott Bryant advised the Defendant of his Miranda rights prior to administering the polygraph examination.

4.  The Defendant hereby *waives his objection* to the admission of evidence relating to his submission to the polygraph examination, the questions contained in the examination, the answers he gave to said questions, and the results of the examination.

5.  The polygraph examination was audio and video-recorded on November 17, 2015.

6.  The Defendant acknowledges his right to objection to the admission of this recording and specifically *waives any objections to the contents of the recording being admitted*, or that a proper foundation must be laid for the recording and *stipulates to the admissibility of the recording*.

7.  The Defendant reserves the right to argue the voluntariness of his waiver of rights to participate in the polygraph examination to the jury as raised in his Motion to Suppress.  Defendant acknowledges that the results of the polygraph will be admitted as part of the video recording and does not wish to have it redacted.  The Defendant will supply an instruction to the Court indicating that the jury should not consider the polygrapher's opinion of the test results as substantive evidence and the jury is to determine the truthfulness of the statements.

8.  The Defendant further acknowledges and makes a record of the fact that there is a strategical trial tactic for agreeing to the admission and stipulation of the evidence related to the polygraph examination and wishes to have it presented to the jury in total.

(Tr. Vol. 3 at 100-02) (emphases added).  After reading the stipulation, the trial court added, "That is the stipulation.  So they've agreed that all this stuff is

admitted. What you do with that evidence is strictly up to you." (Tr. Vol. 3 at 102).

[15] The State then played State's Exhibit 3, the video of Interview #1, for the jury. Dean's counsel then thoroughly cross-examined Detective Haney about Interview #1. Dean's counsel questioned the detective about his interrogation techniques, including the use of deception, that he had used during Interview #1. Counsel also asked the detective multiple times whether Dean had been free to leave the interview room, and the detective replied that he had been.

[16] On the beginning of the third day of trial, Dean—despite having stipulated to the admissibility of the recording of his police interviews—filed a "Renewal of Objection to Evidence and Motion for Instruction to Jury." (App. Vol. 2 at 82). In his motion, Dean stated that he was "renew[ing] his objection to the introduction of videotapes of [his] interrogation by [O]fficers Haney and Bryant on the grounds that the statement taken from [Dean] was not voluntary and that it was induced by implicit promises of leniency." (App. Vol. 2 at 82). The trial court discussed Dean's motion with the parties outside the presence of the jury. The trial court, noting that Dean's motion was the same "argument [he had] made for suppressing the statement in the first place[,]" denied Dean's motion "based on [its] previous ruling." (Tr. Vol. 4 at 4). The trial court, however, agreed that it would give Dean's proposed limiting instruction, which provided that Dean's statements in the videotape were admissible evidence and that the statements by the detectives were not to be considered as evidence. Dean's counsel acknowledged that the trial court was finding that the police

statements were admissible, but he suggested that he was going to make an argument to the jury regarding the voluntariness of the police statements so that the jury could determine "the level of believability they treat the evidence." (Tr. Vol. 4 at 5). The trial court agreed that Dean could argue about the weight of the police statements.

[17] Also that morning, while still outside the presence of the jury, the State, in an effort to "make a record[,]" reminded the trial court that the parties had entered a stipulation regarding the admissibility of State's Exhibit 5, which contained Interview #2 and the polygraph examination. Dean's counsel stated that he had "[n]o objection." (Tr. Vol. 4 at 9). The trial court admitted State's Exhibit 5, stating that "Exhibit 5 [wa]s in." (Tr. Vol. 4 at 9). Thereafter, Dean's counsel stated, "Oh, wait. Except, of course, subject to my original objection about voluntariness." (Tr. Vol. 4 at 9). The trial court reminded counsel that it had denied that objection and then stated: "There's a new rule you don't have to continue making objections. Do you know that? I've made a definitive ruling on that. It's during trial. You don't need to make another objection. I denied your motion." (Tr. Vol. 4 at 9).[3]

[18] Thereafter, the State called Detective Bryant as a witness. The detective testified that he had administered a polygraph examination to Dean during his

---

[3] The "new rule" mentioned by the trial court would have been Indiana Evidence Rule 103(b), which provides that "[o]nce the court rules definitively on the record at trial a party need not renew an objection . . . to preserve a claim of error for appeal." This rule became effective January 1, 2014.

second interview with the police. When the State was ready to publish State's Exhibit 5, the video of the polygraph examination from Interview #2, the State stated, "pursuant to the stipulation, your Honor, the State would move to publish the previously admitted State's Exhibit No. 5." (Tr. Vol. 4 at 19). The trial court then stated, "Mr. Lahey [Dean's counsel], no objection I take it?" (Tr. Vol. 4 at 19). Dean's counsel responded, "No objection." (Tr. Vol. 4 at 19). Before playing the video for the jury, the trial court gave Dean's proposed limiting instruction, which provided as follows:

> You are about to be shown a videotape of an interrogation of Jefferson Dean by Detectives Haney and Bryant of the Special Victims Unit. *What Jefferson Dean says in this videotape is admissible evidence and you may consider it like all other evidence you have heard in this trial.* Statements by the Police Officers, however, were not given under oath, were not subject to cross examination and are not evidence. You may not consider those statements as evidence.

> Specifically, you will hear Officer Bryant tell Mr. Dean that Officer Bryant determined that the polygraph indicated deception by Jefferson Dean in some of his answers. The fact that Jefferson Dean submitted to the Polygraph Examination is evidence and may be considered by you. However, Detective Bryant will not be permitted to testify in court about the results of this examination or whether they indicated deception or not. You may not consider any statements made by him in the videotape as evidence in this case. This includes any statement by Detective Bryant about his interpretation of polygraph results.

(App. Vol. 2 at 82) (emphasis added). The trial court then played the polygraph examination portion of the video from State's Exhibit 5.

[19] When Detective Haney testified, the State then moved to publish the portion of the video from State's Exhibit 5 that contained Dean's interview with Detective Haney. Prior to playing the video, the State told the trial court, "Your Honor, pursuant to the previous stipulation, we'll go ahead and just start the video." (Tr. Vol. 4 at 28). The trial court replied, "Okay," and Dean's counsel made no comment. (Tr. Vol. 4 at 28). Then the State published the portion of the video where Dean had admitted to Detective Haney that he had touched A.C.'s private area. Thereafter, the State moved to admit State's Exhibit 8, the dictated apology letter in which Dean admitted that he had touched A.C.'s vagina, and Dean's counsel stated, "No objection." (Tr. Vol. 4 at 29).

[20] Dean testified on his own behalf and denied that he had molested A.C. He acknowledged that he had told Detective Haney that he had touched A.C. but claimed that he had done so because he "was scared of the outcome of what would happen if [he] didn't admit to something that [he] didn't do." (Tr. Vol. 4 at 74). Dean also testified that he had admitted touching A.C. only because he thought that he would just have to go to counseling. He believed that he would go to prison if he did not admit to touching her.

[21] On cross-examination, Dean acknowledged that he had voluntarily talked to the police during Interview #1 and Interview #2. He also testified that he had voluntarily taken the polygraph examination. The State also had Dean clarify

that the police had never told him that he would get counseling without jail time if he admitted to his crime.

[22] During closing arguments, Dean's counsel reminded the jury of the limiting instruction that explained that Dean's statements to police, which were contained in State's Exhibit 5, were "admissible evidence[,]" but counsel argued that Dean's confession to the police was a "false confession." (Tr. Vol. 4 at 112, 113, 116). Counsel also argued that the jury should not view Dean's admission as a confession because he was "induced by promises" and subjected to "very aggressive" interrogation tactics. (Tr. Vol. 4 at 114, 116). Dean's counsel suggested that Dean's "claim that his confession was false" should "raise a reasonable doubt about whether [the jury] should accept his confession as true[.]" (Tr. Vol. 4 at 113). Additionally, his counsel asserted that the jury should find credibility in Dean's testimony that he had "confessed only because . . . [he] thought that's what [he] had to do and not because [he] had done it." (Tr. Vol. 4 at 129).

[23] As part of the final instructions given to the jury, the trial court gave instructions for the lesser-included offenses of Level 4 felony child molesting and Level 6 battery. The trial court also gave the two jury instructions regarding Dean's argument about the voluntariness of his police statement. The jury found Dean guilty of the lesser-included offense of Level 4 felony child molesting. The trial court imposed a six (6) year sentence, with two (2) years executed and four (4) years suspended to probation. Dean now appeals.

# Decision

[24] On appeal, Dean does not challenge the actual admissibility of State's Exhibit 5, which included Dean's statements to police and the polygraph examination from Interview #2. Indeed, he cannot do so because he stipulated to the admissibility of the exhibit as part of his defense strategy. Instead, he makes arguments that are tangential to the admission of State's Exhibit 5. Specifically, he contends that the trial court used an improper standard of review when it ruled on his motion to suppress, and he makes general policy arguments regarding the propriety of deceptive tactics used by police interrogators.

[25] Because Dean is appealing following a conviction, we note that Dean's first challenge regarding the trial court's ruling on his motion to suppress would more appropriately be framed as whether the trial court properly admitted the evidence at trial. *See Fry v. State*, 25 N.E.3d 237, 241 (Ind. Ct. App. 2015), *trans. denied*. The admission and exclusion of evidence falls within the sound discretion of the trial court, and we review the admission of evidence only for an abuse of discretion. *Wilson v. State*, 765 N.E.2d 1265, 1272 (Ind. 2002).

[26] However, as noted above, Dean stipulated to the admissibility of State's Exhibit 5 for defense strategy reasons. Indeed, Dean acknowledges that "the recording of [his] interrogation" was "admitted without objection" at trial and states that admission was "a matter of Defense trial tactics" as explained in the "stipulation presented to the jury." (Dean's Br. 8). In the parties' stipulation, Dean "waive[d] any objection to the contents of the recording being admitted" and "stipulate[d] to the admissibility of the recording." (Tr. Vol. 3 at 101).

Dean reserved his right to "argue the voluntariness" of his statements contained within the exhibit so that the "jury [could] determine the truthfulness of the statements." (Tr. Vol. 3 at 101, 102). Dean's counsel argued to the jury that they should put no weight into the credibility of Dean's police statements and should disregard them because they were not voluntarily made. The jury made its credibility determination, and we will not review or reweigh such a jury decision. *See Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). Because Dean is appealing following a conviction, his argument regarding the trial court's ruling on his motion to suppress is misplaced. Furthermore, he has waived any admission of evidence argument when he stipulated at trial to the admissibility of the exhibit that contained his police statement as part of a defense strategy.

[27] Waiver notwithstanding, even if we were to construe Dean's appellate arguments as a challenge to the admissibility of his statements in State's Exhibit 5 and he had not stipulated to the admissibility of the exhibit, any potential error in the admission of the statements would be harmless error because they were merely cumulative of other admitted evidence, including A.C.'s testimony and State's Exhibit 8 (Dean's apology letter in which he admitted that he had touched A.C.'s vagina). *See Turner v. State*, 953 N.E.2d 1039, 1059 (Ind. 2011) (holding that an improper admission of evidence is harmless error where the conviction is supported by "substantial independent evidence of guilt satisfying the reviewing court there is no substantial likelihood the challenged evidence contributed to the conviction"); *King v. State*, 985 N.E.2d 755, 759 n.4 (Ind. Ct.

App. 2013) (explaining that any error in the admission of evidence that is merely cumulative of other evidence admitted is harmless), *trans. denied*.

[28] We also note that Dean's arguments regarding the propriety of deceptive tactics used by police interrogators merely equate to policy arguments and do not raise reviewable appellate issues. More specifically, Dean cites to *Henry v. State*, 738 N.E.2d 663 (Ind. 2000), a case in which our Indiana Supreme Court stated that it did not condone deceptive police interrogation tactics, but it specifically refused to hold that such tactics would automatically render a confession inadmissible. *Henry*, 738 N.E.2d at 664. Instead, the *Henry* Court explained that such tactics "weigh[ed] heavily against the voluntariness of [a] defendant's confession" and would be viewed as one of the factors under the "'totality of the circumstances' test" for determining the voluntariness of a confession. *Id.* at 665. Dean also refers to Detective Haney's cross-examination testimony that police officers are allowed to use deceit in a police interrogation and that caselaw had permitted such a practice. Dean contends that the detective's testimony was "a crude and prejudicially misleading oversimplification[.]" (Dean's Br. 10).

[29] Dean does not challenge the admission of the detective's testimony, nor could he, since the testimony was specifically elicited during Dean's cross-examination of the detective. *See Thacker v. State*, 578 N.E.2d 784, 786 (Ind. Ct. App. 1991) (explaining that it is invited error for an appellant to elicit testimony from a witness on cross-examination and then claim error in the admission of the testimony on appeal); *Kingery v. State*, 659 N.E.2d 490, 494 (Ind. 1995)

(holding that "[i]nvited errors are not subject to appellate review"), *reh'g denied.* Instead, he "asserts that lies by police interrogators must be subjected to special analytical treatment, because they weigh heavily against the voluntariness of a confession, as held in the widely-ignored *Henry v. State*, 738 N.E.2d 663, 665 (Ind. 2000)." (Dean's Br. 6). Dean also suggests that the police, in general, have disregarded the Indiana Supreme Court's holding in *Henry*, and he asserts that this disregard has caused "a conflict between Judicial and Executive branches of government[,]" resulting in "a subject worthy of scholarly analysis[.]"). (Dean's Br. 15). He further contends that *Henry* "should have a practical application to the tactics of police interrogators" and that "[t]he disregard of one arm of governance for the edicts of a powerful competing appendage" is "a subject begging review" and "is now presented to the Court for desperately-needed clarification." (Dean's Br. 6, 15). We decline Dean's request to clarify or comment on the policy issues he has raised because we do "not render advisory opinions." *Reed v. State*, 796 N.E.2d 771, 775 (Ind. Ct. App. 2003).

[30] Affirmed.

Riley, J., and Robb, J., concur.